645 P.2d 243

**TUCSON ELECTRIC POWER COMPA-NY, an Arizona corporation,
Plaintiff-Appellee,**

v.

**ARIZONA CORPORATION
COMMISSION,
Defendant-Appellant.**

No. 1 CA–CIV 5346.

Court of Appeals of Arizona,
Division 1, Department A.

April 2, 1981.

Review Granted July 7, 1981.

Robert T. Murphy, Timothy A. Ingraham, Phoenix, for plaintiff-appellee.

Robert K. Corbin, Atty. Gen. by Charles S. Pierson, Asst. Atty. Gen. and Shimmel, Hill, Bishop & Gruender, P.C. by Michael M. Grant, Andrew W. Bettwy, Phoenix, for defendant-appellant.

## OPINION

FROEB, Presiding Judge.

This is an appeal from a superior court judgment reversing an order of the Arizona Corporation Commission which denied a rate increase to Tucson Electric Power Company.

On February 2, 1979, Tucson Electric Power Company (Company) filed an application with the Arizona Corporation Commission for a rate increase. A hearing was held in August 1979. On November 15, 1979, the Commission issued its decision which found that the current rates charged by the Company were just and reasonable and denied an increase. An application for rehearing filed by the Company was later denied. The Company then appealed to the superior court requesting a trial *de novo* pursuant to A.R.S. § 40–254.

The superior court conducted a two-day trial. On March 4, 1980, the court entered its judgment vacating and setting aside the Commission's decision and authorizing the Company to fix and implement interim rates. The judgment noted six specific instances where the decision was "not supported by substantial evidence":

1. The classification of the sales by the Company to South California Edison as "firm" rather than "nonfirm" or "interruptible";

2. The allocation of the Company's transmission property and related expenses;

3. The adoption of a twelve-month coincident peak method of allocation rather than a four-month coincident peak;

4. The "normalization" of certain sales for resale by the Company;

5. The assigning of the nonjurisdictional tax benefit, created by allocation methodology, to jurisdictional customers;

6. The findings of return on common equity.

Our initial inquiry concerns the scope of review in the superior court of a rate order issued by the Arizona Corporation Commission. These are murky waters never squarely addressed by Arizona appellate courts.

■ The Arizona Corporation Commission is given full, plenary, indeed, exclusive power to fix public utility rates in Arizona. Arizona Constitution, art. XV, § 3; *Arizona Corporation Commission v. Arizona Public Service Co.*, 113 Ariz. 368, 555 P.2d 326 (1976); *Simms v. Round Valley Light & Power Company*, 80 Ariz. 145, 294 P.2d 378 (1956); *Ethington v. Wright*, 66 Ariz. 382, 189 P.2d 209 (1948); *State v. Tucson Gas, Electric Light and Power Company*, 15 Ariz. 294, 138 P. 781 (1914).

■ Nevertheless, a regulated company has the right to appeal to the courts from a rate order issued by the Commission. Arizona Constitution, art. XV, § 17; *Ethington v. Wright.* The legislature has enacted A.R.S. § 40–254 which establishes the procedure by which such an appeal is governed.[1] Notwithstanding the language

---

1. A.R.S. § 40–254 reads as follows:

 A. Any party in interest, or the attorney general on behalf of the state, being dissatisfied with any order or decision of the commission, may within thirty days after a rehearing is denied or granted, and not afterwards, commence an action in the superior court of the county in which the commission has its office, against the commission as defendant, *to vacate and set aside such order or decision on the ground that the valuation, rate, joint rate, toll, fare, charge or finding, rule or regulation, classification or schedule, practice, demand, requirement, act or service provided in the order or decision is unlawful,* or that any regulation, practice, act or service provided in the order is unreasonable. The answer of the commission shall be served and filed within twenty days after service of the complaint, whereupon the action shall be at issue and ready for trial upon ten days notice to either party. The action shall be tried and determined as other civil actions except as provided in this section.

 B. If the commission rescinds the order complained of, the action shall be dismissed, and if the commission alters, modifies or amends the order, the altered, modified or amended order shall replace the original order complained of, and judgment shall be given thereon as though made by the commission in the first instance.

 C. The trial shall conform, as nearly as possible and except as otherwise prescribed by this section, to other trials in civil actions. Judgment shall be given affirming, modifying or setting aside the original or amended order.

 D. Either party to the action, or the attorney general on behalf of the state, within thirty days after the judgment of the superior court is given, may appeal to the supreme court.

 E. *In all trials, actions and proceedings the burden of proof shall be upon the party*

which describes the review procedure in terms of a "trial *de novo*," the Arizona Supreme Court has said that the review in rate cases is limited and "cannot operate to permit the court to usurp, directly or indirectly, the commission's power thus given." *Simms v. Round Valley Light & Power Company*, 80 Ariz. at 154–55, 294 P.2d 378.

On appeal to the superior court, the standard of review for a rate order is whether it is "unlawful." A.R.S. § 40–254(A)[2]. The court will examine the decision of the Commission to determine if it is supported by substantial evidence. *Simms v. Round Valley Light & Power Company.* An order may be unlawful even though supported by substantial evidence, if the evidence was improper or illegal. *See, e.g., Arizona Corporation Commission v. Citizens Utility Company*, 120 Ariz. 184, 584 P.2d 1175 (App. 1978). It is settled that the superior court may not reweigh the evidence and substitute its judgment where the Commission has not "abused its range of legislative discretion." *Sun City Water Co. v. Arizona Corporation Commission*, 113 Ariz. 464, 465, 556 P.2d 1126 (1976); *see Arizona Corporation Commission v. Arizona Public Service.*

■ Since the appeal to the superior court is a limited trial *de novo*, under what circumstances may the court take and consider evidence? The only logical answer is that there are two stages to the review in the superior court. The first stage is a review of the record of proceedings before the Commission to determine if the findings and conclusions of the Commission are supported by substantial evidence and if that evidence is lawful. If the court determines that the findings and conclusions are so supported, the inquiry is at an end and the rate order of the Commission should be affirmed. If, however, one or more of the findings and conclusions are not so supported, the second stage of review, the limited trial *de novo*, comes into play. It is here that the court may take evidence both in support of, as well as in opposition to, the previously unsupported finding or conclusion.[3] The limited trial *de novo* is, in effect,

adverse to the commission or seeking to vacate or set aside any determination or order of the commission to show by clear and satisfactory evidence that it is unreasonable or unlawful.

F. Except as provided by this section no court of this state shall have jurisdiction to enjoin, restrain, suspend, delay or review any order or decision of the commission, or to enjoin, restrain or interfere with the commission in the performance of its official duties, and the rules, regulations, orders or decrees fixed by the commission shall remain in force pending the decision of the courts, but a writ of mandamus shall lie from the supreme court to the commission in cases authorized by law. (emphasis added).

2. In our opinion, the standard for review is not whether the *rate* order was "unreasonable." The unreasonable standard in A.R.S. § 40–254(A) relates only to a "regulation, practice, act or service provided in the order." The word "rate" is not included in that clause. In A.R.S. § 40–254(E), the word "unreasonable" relates back to its use in paragraph A. Thus, the superior court standard of review in *rate* decisions is whether the rate is unlawful, not whether it is unreasonable. There are several Arizona decisions, not dealing with this precise issue, which use both the words "unreasonable" and "unlawful" in referring to the standard of review in a rate case. No case has

been brought to our attention specifically dealing with this question.

3. The dissenting opinion refers to *State v. Arizona Corp. Comm'n*, 94 Ariz. 107, 382 P.2d 222 (1963), for the contention that new evidence is always admissible in the superior court review of a rate case. In our opinion, the case does not stand for that proposition. The issue in that case was whether the losing party before the Commission had to file a petition for rehearing before seeking review in superior court. The court rejected that idea and in discussing the doctrine of exhaustion of administrative remedies stated:

The doctrine does not require, however, that the commission must have a double look at every item of evidence that might be presented. Indeed, the reviewing court is free to consider evidence which was not adduced before the commission, *Gibbons v. Arizona Corporation Commission*, 75 Ariz. 214, 254 P.2d 1024 (1953).

94 Ariz. at 110. This dicta, which appears to be included merely to support the primary holding on the doctrine of exhaustion of remedies clearly does not contradict what we have held on the case at bar. The superior court *is* free to consider new evidence, but only after it has determined that the findings of the Commission are unsupported or unlawful. We note also that the case cited in the quotation above,

a second opportunity by both the Commission, as well as the regulated company, to demonstrate that the rate order is either lawful or unlawful. It is possible that the unsubstantiated evidentiary finding, and therefore the rate order of the Commission, will nevertheless be found lawful in light of the evidence considered by the trial court. Pursuant to A.R.S. § 40–254(E), the burden of proof is on the party adverse to the Commission to show by clear and convincing evidence[4] that the rate order is unlawful. Thus, the challenged finding or conclusion may be upheld upon weaker proof than that which the Commission would have required in the first instance, since the burden of proof in the hearing before the Commission is based upon the preponderance of the evidence. Stated otherwise, the party adverse to the Commission must, on appeal to the superior court, prevail upon stronger evidence than would have been necessary before the Commission.

This analysis satisfies A.R.S. § 40–254, yet recognizes the expertise of the Commission in this field and gives the required deference to the Commission's constitutional rate-setting power. If the order of the Commission is supported by substantial legal evidence, the trial court cannot receive new, additional evidence, reweigh the entire matter, and then substitute its judgment for that of the Commission. If, however, the order of the Commission is not so supported, additional evidence may be presented to the trial court to determine whether the rate order will be affirmed or vacated.

■ We turn, next, to the scope of review on appeal to *this* court. Where the superior court allowed additional evidence in a limited trial *de novo*, we must first determine whether there was substantial and lawful evidence before the Commission to support its findings. If there was, the Commission decision will be upheld. If there was not, then we must determine if the decision by the superior court is sup-

ported by "reasonable" evidence. *Sun City Water Co. v. Arizona Corporation Commission.* In this, our review involves both the evidence before the Commission as well as the court, since both may combine to satisfy the "reasonable" evidence standard.

With the foregoing in mind, we turn to the six findings of the Commission which the superior court found were not supported by substantial and lawful evidence.

### FIRM VERSUS INTERRUPTIBLE

■ One of the questions before the Commission was whether sales of energy under a contract between the Company and Southern California Edison were, in effect, a commitment of a portion of the Company's generating capacity (firm) or merely sales of surplus energy with no commitment of the Company's capacity (interruptible). The question was relevant because if the sales were classified as firm, then a pro rata portion of the Company's production plant and demand-related expenses should be allocated to the jurisdiction of the Federal Energy Regulatory Commission (FERC) which regulates rates for sales to utilities not in Arizona. This would have the effect of removing property from the Arizona jurisdictional rate base and operating expenses from the Arizona jurisdictional operating income. In its decision, the Commission classified the sales as firm. The superior court, however, held:

> [The Finding] was not supported by substantial evidence, since the evidence showed that such sales should be more properly characterized as "non-firm" or "interruptible" with no portion of the Company's plant and demand related expenses being allocated to the [FERC] jurisdiction by reason thereof.

Examination of the Commission record indicates that there was substantial evidence upon which to base its finding that

---

*Gibbons v. Arizona Corporation Commission,* is a transportation certification case, not a rate case. See text & notes 6–7 *infra.*

4. The expressed statutory standard is "clear and satisfactory" evidence. Those words, however, denote the same burden as "clear and convincing evidence." *See Lofersky v. Needel,* 26 Ariz.App. 231, 234, 547 P.2d 502, 505 (1976).

the contract was "firm." The problem with this issue is that the parties on both sides attempt to pigeon-hole these sales as either firm or interruptible, and the contract appears to be somewhere in-between. This was admitted by the Commission's expert, Dr. Ileo.

The question, however, is not whether the agreement was absolutely firm or absolutely interruptible; the question is whether the costs associated with the furnishing of electricity by the Company to an out-of-state customer should be allocated to in-state customers. There was substantial evidence that indicated that this contract was, at the least, not interruptible since there was some degree of commitment. The Commission decision recognized this [5], and since it was substantially and lawfully supported, the superior court should have affirmed the Commission decision on this point without taking new evidence.

### ALLOCATION OF TRANSMISSION PROPERTY AND RELATED EXPENSES

■ Another question before the Commission was whether the Company had an integrated or disjointed transmission system. This question was important because if the Company needed to use its transmission system to deliver power to FERC jurisdictional customers (integrated), then a certain amount of transmission plant and related expenses would have to be allocated to FERC. The Commission found the system was integrated and adopted a factor of 20.6% for allocation to FERC jurisdictional customers. The superior court, however, rejected this finding and held that "[w]ith the exception of sales to one nonjurisdictional customer ..., the Company's transmission system was utilized only for sales to

Arizona customers; and, therefore, the Commission's allocation of transmission property ... was not supported by substantial evidence." We disagree.

Examination of the Commission transcripts indicates there was substantial evidence upon which the Commission based its decision. In its argument before this court, the Company attacks the testimony of Dr. Ileo (whose testimony supported the Commission finding) as being based on hearsay conversations with a man in the Company shop who had a mechanical, not an electrical engineering degree. Further the Company argues that Einar Greve (whose testimony before the Commission disagreed with the Commission finding) had a master's degree in electrical engineering and over twenty-five years of experience. All of that, however, is irrelevant on appeal because it goes only to the *weight* of the testimony. The Commission found, based on Dr. Ileo's testimony and other evidence, that approximately twenty percent of the transmission expenses should not be allocated to Tucson area customers. The superior court incorrectly admitted new evidence on this point; the Commission decision was based on substantial evidence and should have been affirmed.

### NORMALIZATION OF SALES

■ It is necessary for the Commission, when deciding upon a company's request for a rate hike, to look at a test year so as to project the future income and power needs of the company. In this case, 1978 was the test year. In that year, wholesale energy sales to FERC jurisdictional customers took place only after May. Since both parties agreed that there would be substantial wholesale sales in the future, a "normalization" process was necessary which

5. The decision stated:

Additionally, even if we were to be incorrect in our legal interpretation of the contract [that the sales were "firm"] and the record surrounding it, we would still reach the same result for our own regulatory purposes. For, like Staff, we think that TEP's contractual commitment to Southern California Edison Company sufficiently constituted a guaran-

teed commitment of power that production plant and demand-related expenses should be allocated to the FERC jurisdictional customers, the beneficiaries of that commitment. We so conclude based not only on the regulatory history discussed above, but also because any other conclusion may very likely lead to double-recovery of the capacity costs associated with the contract.

would fictionalize sales for the first five months so a realistic projection could be made.

In its decision, the Commission based this procedure on figures, supplied by the Company's witnesses, as to wholesale energy sales that would be made in 1978 and 1979. The Company now contends however, that figures admitted in the superior court as to 1980 and 1981 demonstrate that the Commission's finding is "unreasonable." It also refers us to *Arizona Corporation Commission v. Reliable Transportation Co.*, 86 Ariz. 363, 346 P.2d 1091 (1959), for the proposition that the superior court may hold a Commission decision unreasonable on the basis of evidence presented to the superior court, even though the Commission may have acted reasonably on the evidence given it.

■ First, we reiterate that the superior court review of a rate decision by the Commission is not whether it was unreasonable but whether it was supported by substantial and lawful evidence.[6] Next, we note that *Reliable Transportation* was a carrier certification proceeding and not a rate decision. As stated in *Reliable Transportation*:

We note in passing that review of a Commission rate order, promulgated pursuant to a specific constitutional grant of authority, is, *contrary to the instant situation*, strictly limited.[7]

■ The evidence before the Commission relating to normalization was substantial and it was error for the superior court to admit new evidence on this point. The Commission's decision on normalization should have been affirmed.

### TWELVE–MONTH VERSUS FOUR–MONTH PEAK COINCIDENTAL CYCLE

■ Sales to FERC jurisdictional customers also necessitated that the Commission adopt some percentage figure to allocate costs between the two jurisdictions.

6. See text & note 2 *supra*.

7. *Ariz. Corp. Comm'n v. Reliable Transportation Co.*, 86 Ariz. at 371 n.4, 346 P.2d 1091

Two different demand allocations were presented to the Commission. The Company urged a four-month coincident peak methodology and the Commission's staff urged a twelve-month coincident peak. In the four-month methodology, the peak demand for each of the four summer months was determined; then the average demand for Arizona and FERC jurisdictional customers was calculated and a percentage allocation was derived. In the twelve-month methodology, the same thing was done except all twelve months were averaged. Since there were no FERC jurisdiction sales in the first five months of 1978, however, "normalization" was used to adjust demand upward in those months. Because Arizona customers use more energy in the summer, the four-month methodology results in a greater percentage allocated to them. The Commission used the twelve-month methodology, giving the following reasons:

TEP's contractual commitments for sales for resale should be treated as equivalent demands on TEP's system and costs should be assigned between the ACC and FERC jurisdictions accordingly. Since the Company is heavily engaged in wholesale sales, the Applicant's argument that we should allocate based upon the 4–CP methodology because the system was designed for the summer peaking requirements of the Tucson area ignores, in our opinion, the realities which are presented to this Commission in 1979. The Company is involved in sales for resale in non-jurisdictional areas . . . .

The superior court, however, found that the Commission decision was unsupported by substantial evidence.

The Company initially attacks the Commission finding based on the theory that "normalization" was incorrectly applied. Since we have already decided that normalization was correctly used by the Commission, appellee's initial argument fails. Appellee also contends that the sales to nonju-

(emphasis added). This language specifically points out why the dissenting opinion's reliance on *Reliable Transportation* is erroneous.

risdictional customers in November and December were "nonfirm" and therefore demands in those months were artificially high. We have also dealt with that issue and sustained the Commission's classification of the energy sales as firm. Therefore, since the Commission was not wrong in designating the November-December sales as firm and in using normalization, there was substantial evidence to support its decision to use the twelve-month methodology. This evidence included testimony that there was not a significant difference in the summer and winter normalized loads. Further, when actual demand (as opposed to normalized or fictionalized demand) between October 1978 and April 1979 is examined, the highest peak is less than 125% of the lowest demand peak.

 The Company also contends that use of the twelve-month methodology constitutes invidious discrimination by the Commission because a four-month methodology was used in a decision relating to Arizona Public Service. We reject this argument. Discrimination in a commercial regulatory context is shown only where wholly arbitrary and invidious. *New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Even when excluding the obvious climatic differences between the areas each company services, there could be a myriad of reasons for the situations to differ. One of those reasons, important to this case, might be the difference in wholesale energy sales.

The superior court incorrectly admitted new evidence on this point because there was substantial evidence to support the Commission's decision to use a twelve-month peak cycle methodology.

## TAX BENEFIT

 The question involved in this issue was whether a hypothetical tax expense should be allocated to the Arizona jurisdictional customers. At the Commission hearing, both parties indicated that the hypothetical tax expense should be so allocated. The Commission's decision, however, only allocated the *actual* taxes incurred by the

Company. Recognizing that there had been no evidence presented to support its position, the Commission stated in its decision that it had complete discretion to decide this issue and cited *Federal Power Commission v. United Gas Pipe Line Co.*, 386 U.S. 237, 87 S.Ct. 1003, 18 L.Ed.2d 18 (1967). The superior court found that this conclusion was not based upon substantial evidence and, after examining new evidence, it reversed the Commission. We agree with the trial court.

This issue arose because of the Commission's allocation of Company expenses and revenue between Arizona and FERC jurisdictional customers. By reason of this allocation, the net income for the Arizona jurisdiction was larger than the net income for the Company as a whole. This was because there was a net loss computed for the FERC jurisdiction. When allocating the tax expense, however, the Commission allocated only the *actual* tax expense to the Arizona jurisdiction. This, of course, was a smaller figure than the taxes hypothetically would have been in the Arizona jurisdiction. In sum, the Commission allocated income to the Arizona jurisdiction without allocating the proper amount of tax burden. This was done in spite of the fact that both the Commission's staff and the Company wanted to allocate a proper tax burden commensurate with income. The decision, therefore, was not supported by substantial evidence and the superior court properly admitted new evidence in the limited trial *de novo*.

At the superior court trial, as with the Commission hearing, no evidence was introduced supporting the Commission's decision on this issue. Citing the *United Gas Pipe Line* decision, the Commission argued, as it does on appeal, that it has complete discretion in the matter and needs no evidentiary support for its decision. We are not, however, persuaded by this. In *United Gas Pipe Line* there were at least some witnesses who contended that taxes be allocated as they were; in this case, there were none.

It is necessary that the Commission base its decision on evidence to arrive at this

element in its rate decision. The Commission cannot be arbitrary. *Simms v. Round Valley Light & Power Co.* Examination of the superior court record indicates that there was reasonable evidence upon which the court based its decision reversing the Commission on the hypothetical tax expense.

The tax loss accorded to the FERC jurisdiction (in essence a tax benefit to the Company) should not be given effect in the Arizona jurisdiction. In the absence of evidence, the Commission should have assumed that the FERC jurisdiction would properly set the Company's rates for sales outside of Arizona and that a loss would not occur. If the FERC jurisdiction sets proper rates and the Commission has allocated a loss to reduce Arizona jurisdiction taxable income, then the Company would owe more in taxes than was supposed by the Commission. Consequently, the increased tax expense would reduce after-tax income to an amount less than the forecasted income underlying the rate of return decided upon. We therefore affirm the superior court on this issue.

### RETURN ON COMMON EQUITY

▉ The final issue involves the Commission's finding on the return on common equity. At the hearing, three witnesses offered three different opinions. One expert offered 13.5%; the Company vice-president offered 15.25%; and another expert offered a range of 13.8% to 14.2%. The Commission chose the latter.

The superior court found this recommendation not supported by substantial evidence. This conclusion was based upon evidence which was admitted at the trial *de novo* which showed that the Company's stock was currently being sold for less than book value. We disagree with the superior court's conclusion.

Of the three opinions given at the hearing, the Commission adopted the median one. We find the decision was supported by substantial evidence.

▉ The Company attacks the expert's opinion as not based on a legally adequate foundation. It does this by condemning the methodology employed by the expert. This attack, however, is spurious. The methodology employed by the expert who proposed the 13.8–14.2% range was remarkably similar to that used by the expert who proposed 13.5%. Further, examination of the record indicates that their approaches were studied and reasoned. The Commission had substantial evidence to support its finding relative to return on common equity. Thus, the trial court should have affirmed the decision without allowing new evidence.

Finally, the Commission, on this appeal, contends that the superior court's order allowing the Company to set its own interim rates was improper. Although this issue is moot, we would note, in passing, that the order by the superior court allowing interim rates may have been inappropriate in light of the fact that a new rate proceeding had already commenced. *See Sun City Water Co. v. Arizona Corporation Commission.*

### CONCLUSION

The judgment of the superior court is affirmed in part and reversed in part. The case is remanded to superior court with directions to enter an amended judgment vacating and setting aside the opinion and order of the Arizona Corporation Commission in Docket No. U–1933 dated November 15, 1979 (Decision No. 50430) and directing the Commission to fix a just and reasonable rate consistent with this opinion.

CONTRERAS, P. J., concurs.

WREN, Chief Judge, dissenting.

I respectfully disagree. Admittedly the nature of the judgment which may be rendered on review in superior court is far more restrictive in "rate" cases than in "certificate" cases. However, the whole concept of the *de novo* review provided for in A.R.S. § 40–254 is the right to introduce new evidence before any determination is made by the court. How else, may I ask, can the burden of proof required in § 40–254(E) be met by the party seeking to va-

cate or set aside the order of the Commission without the introduction of new or additional evidence on the question of *lawfulness*? Moreover, subsection C. requires that the trial "conform, as nearly as possible ... to other trials in civil actions."

In my opinion, the majority has rewritten the statute, and its decision is contra to previous interpretations by the Arizona Supreme Court on the subject. Admittedly, the true function of superior court review of Commission orders is far from clear. Certainly, the statement by the majority that the waters in this area are "murky" will get no argument from me. However, part of the confusion, I am certain, stems from the semantics of the standard of review reiterated in a long line of cases: that the question to be resolved is whether the Commission's decision was unlawful or unreasonable. As stated in *Arizona Corporation Commission v. Reliable Transportation Company*, 86 Ariz. 363, 346 P.2d 1091 (1959):

> The scope of judicial review of orders of the Commission is clearly set forth in our statutes and in the decisions of this Court.
>
> Under A.R.S. § 40–254, review of an order of the Commission must be sought by commencement of a separate action, triable as other civil actions. In such action appellant has the burden "to show by clear and satisfactory evidence that it [the determination or order of the Commission] is unreasonable or unlawful." This court has held that the trial of such action is *de novo*, in which new evidence may be received and considered. *id.* at 370, 346 P.2d at 1096.

This language apparently prompted *Reliable Transportation* to also state:

> The fact that new evidence may be introduced at the trial qualifies to some extent the apparently strict rule that the order of the commission may be set aside only if it is "unreasonable or unlawful." *Thus, the superior court may properly hold an order unreasonable on the basis of the "clear and satisfactory evidence" presented to it, whereas it may be perfectly apparent that the Commission act-*

*ed reasonably on the basis of the evidence which it had to consider. id.* at 371, 346 P.2d at 1096. (emphasis added)

In my opinion, *Simms v. Round Valley Light & Power Co.* does not lend credence to the procedure which the majority has adopted; that the review statute be bifurcated to provide for presentation of *new* evidence only if the Commission's decision in a *rate* case is first determined, solely on the record before the Commission, to be "unlawful." In *Simms*, the superior court was reversed by the Supreme Court, not because the Supreme Court disagreed with the superior court's consideration of *additional evidence*, but rather because the superior court had usurped the Commission's legislative powers by making an independent determination of "fair value". *Simms* stated:

> In court the company submitted additional evidence presented in the form of an appraisement less observed depreciation plus working capital, etc., resulting in a current fair value of $206,338. The court weighed all this evidence and decided the fair value of the property was $205,070. 80 Ariz. at 154, 294 P.2d at 384.

After noting that the trial court could not weigh the evidence and make a finding of "fair value", the Supreme Court went on to decide that:

> The [trial] court may consider the evidence only for the purpose of determining whether the Commission in its finding of fair value acted unreasonably in that its finding has no substantial support in the evidence, is arbitrary or otherwise unlawful. 80 Ariz. at 155, 294 P.2d at 394.

In my opinion, the Supreme Court was referring to *both* the evidence before the Commission *and* the additional evidence introduced in superior court, and was clearly stating that the court must consider *all* the evidence for the purpose of determining whether or not the decision of the Commission was arbitrary or unlawful. The decision did not proscribe the consideration of new evidence offered in superior court on all issues held for review.

In *Arizona Corporation Commission v. Citizens' Utilities Co.*, 120 Ariz. 184, 584 P.2d 1175 (App.1978), this court concluded:

We start with the basic proposition that the Commission is constitutionally mandated to set fair rates of return on fair value base of public service utilities. Ariz.Const., art. 15, §§ 3, 14. This function cannot be performed by the judiciary and the judicial role is limited, albeit in a trial *de novo* situation, to determining whether the Commission's decision was supported by substantial evidence, was not arbitrary and was not otherwise unlawful. *Simms v. Round Valley Light and Power Co.*, 80 Ariz. 145, 294 P.2d 378 (1956). *id.* at 188, 584 P.2d at 1179.

While not an issue in the case, it is obvious from a reading of *Citizens' Utilities* that new evidence was introduced at the very inception of the trial on review in superior court, and that the trial court even addressed the merits of its admissibility under such evidentiary concepts as "relevance" and "impeachment". Also in *State ex rel. Church v. Arizona Corporation Commission*, 94 Ariz. 107, 382 P.2d 222 (1963) (a rate case) it was held that the reviewing court is free to consider evidence which was not brought before the Commission. *See Gibbons v. Arizona Corporation Commission*, 75 Ariz. 214, 254 P.2d 1024 (1953).

The entire gamut of judicial review of a rate proceeding is aptly expressed by Justice Holohan in *Sun City Water Company v. Arizona Corporation Commission*, 113 Ariz. 464, 556 P.2d 1126 (1976), where evidence introduced in superior court was used to determine that a Commission's rate of return was "lawful":

The Company contends that the rate of return established by the Commission is unreasonable, unlawful and confiscatory. *The superior court, after hearing evidence at the de novo trial, found that the Company had not met the burden of proof necessary for a party to successfully challenge a Commission order.* A.R.S. § 40–254(E) sets forth the required standard as follows:

"In all trials, actions and proceedings [in the superior court] the burden of proof shall be upon the party adverse to the commission or seeking to vacate or set aside any determination or order of the commission to show by *clear and satisfactory evidence* that it is unreasonable or unlawful." (Emphasis supplied.)

The trial judge found that the Company had not shown by "clear and satisfactory evidence" that the Commission's order regarding rate of return was "unreasonable or unlawful." The lower court was aware that it could not substitute its own judgment for the Commission's where the letter had not abused its range of legislative discretion. *Arizona Corporation Commission v. Arizona Public Service Company*, 113 Ariz. 368, 555 P.2d 326 (1976); *Simms v. Round Valley Light & Power Co.*, 80 Ariz. 145, 294 P.2d 378 (1956). When reviewing a superior court's de novo review of a Commission order this Court will not conduct a separate de novo trial but will uphold the trial court's judgment if it is supported by any reasonable evidence. *Corporation Commission of Arizona v. People's Freight Line, Inc.*, 41 Ariz. 158, 16 P.2d 420 (1932). *The superior court's judgment regarding the Commission's rate of return was supported by such reasonable evidence.* 113 Ariz. at 465, 556 P.2d at 1127. (emphasis added.)

There is no case law in existence to support the position adopted by the majority. I submit that this paucity results from the language of § 40–254 itself. Admittedly, the matter needs attention, but the ambiguity will not be resolved by judicial tampering with the statute and established case law. As to the merits of this appeal, I find reasonable evidence to support the trial court's decision, and would therefore affirm the judgment setting aside the Commission's order.