645 P.2d 231

**TUCSON ELECTRIC POWER COMPA-
NY, an Arizona corporation,
Plaintiff-Appellee,**

v.

**ARIZONA CORPORATION
COMMISSION,
Defendant-Appellant.**

No. 15520–PR.

Supreme Court of Arizona,
In Banc.

April 13, 1982.

Robert T. Murphy, Timothy A. Ingraham, Phoenix, for plaintiff-appellee.

Robert K. Corbin, Atty. Gen. by Charles S. Pierson, Asst. Atty. Gen. and Shimmel, Hill, Bishop & Gruender, P. C. by Michael M. Grant, Andrew W. Bettwy, Lawrence V. Robertson, Jr., Phoenix, for defendant-appellant.

Snell & Wilmer by Jaron B. Norberg, Phoenix, for amicus curiae Arizona Public Service Co.

Joseph C. O'Neil and Fennemore, Craig, von Ammon & Udall by Calvin H. Udall, C. Webb Crockett, George T. Cole, Phoenix, for amicus curiae The Mountain States Tel. and Tel. Co.

CAMERON, Justice.

We granted a petition for review of a decision and opinion of the Court of Appeals, Division One, for the purpose of reexamining the standard and scope of judicial review of rate decisions by the Arizona Corporation Commission. We have jurisdiction pursuant to A.R.S. § 12–120.24 and Rule 23, Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

We must answer the following questions on review:

1. Under what standards must the Superior Court review rate decisions of the Arizona Corporation Commission?

2. Under what circumstances may the Superior Court admit new evidence in reviewing rate decisions of the Arizona Corporation Commission?

3. Did the Superior Court abuse its discretion in vacating certain findings of the Arizona Corporation Commission?

The facts necessary for a determination of these issues are as follows. On 2 February 1979, the Tucson Electric Power Compa-

ny filed an application with the Arizona Corporation Commission for a rate increase. During August of 1979, the Commission conducted an extended hearing for the purpose of ascertaining the fair value of the electric utility properties of Tucson Electric and for determining the level of just and reasonable rates that the company could charge its Tucson area customers in order to maintain a fair return on investment. On 15 November 1979, the Commission issued its decision which found that the current rates then being charged by Tucson Electric were just and reasonable, and the petition for a rate increase was denied.

The company then appealed to the Superior Court pursuant to A.R.S. § 40–254. After conducting a two day trial, the Superior Court, on 4 March 1980, entered a judgment vacating and setting aside the Commission's decision to deny a rate increase to Tucson Electric. The Superior Court based its decision upon a finding that there were six specific instances where the Commission's decision was "not supported by substantial evidence." The Commission's appeal to Division One of the Court of Appeals resulted in a substantial reversal of the Superior Court. *Tucson Electric Power Company v. Arizona Corporation Commission*, 132 Ariz. 252, 645 P.2d 243 (App. 1981). In doing so, the Court of Appeals held that the Superior Court judge had abused her discretion in not exercising the proper standard of review in rate making decisions by the Arizona Corporation Commission. The Commission's decision was then reinstated in substantial part. We granted the petition for review to settle what appears to be confusion regarding the standard and scope of review by a Superior Court when considering an appeal from a Corporation Commission order in a rate case.

## STANDARD OF REVIEW

■ The Arizona Constitution provides that the Arizona Corporation Commission is given full power to prescribe just and reasonable rates to be charged by public service corporations within the state. Ariz.

Const., Art. 15 § 3. We have described the Corporation Commission's power to fix rates as both exclusive and plenary. *Arizona Corporation Commission v. Arizona Public Service Co.*, 113 Ariz. 368, 555 P.2d 326 (1976); *Simms v. Round Valley Light & Power Co.*, 80 Ariz. 145, 294 P.2d 378 (1956); *Ethington v. Wright*, 66 Ariz. 382, 189 P.2d 209 (1948); *State v. Tucson Gas, Electric Light and Power Company*, 15 Ariz. 294, 138 P. 781 (1914). Our Constitution also provides:

"§ 17. Appeal to courts

"Section 17. Nothing herein shall be construed as denying to public service corporations the right of appeal to the courts of the State from the rules, regulations, orders, or decrees fixed by the Corporation Commission, but the rules, regulations, orders, or decrees so fixed shall remain in force pending the decision of the courts." Ariz.Const., Art. 15 § 17.

The Constitution does not provide the standard for review, but the legislature has stated:

"A. Any party in interest, or the attorney general on behalf of the state, being dissatisfied with any order or decision of the commission, may within thirty days after a rehearing is denied or granted, and not afterwards, commence an action in the superior court of the county in which the commission has its office, against the commission as defendant, to vacate and set aside such order or decision on the ground that the valuation, rate, joint rate, toll, fare, charge or finding, rule or regulation, classification or schedule, practice, demand, requirement, act or service provided in the order or decision is unlawful, or that any regulation, practice, act or service provided in the order is unreasonable * * *.

\*　　\*　　\*　　\*　　\*　　\*

"C. The trial shall conform, as nearly as possible * * * to other trials in civil actions. * * *

\*　　\*　　\*　　\*　　\*　　\*

"E. In all trials, actions and proceedings the burden of proof shall be upon the

party adverse to the commission or seeking to vacate or set aside any determination or order of the commission to show by clear and satisfactory evidence that it is unreasonable or unlawful." A.R.S. § 40–254(A)(C) & (E).

According to this statute, the party seeking to overturn a decision of the Corporation Commission in a rate case has the burden of showing by clear and satisfactory evidence that the action of the Commission is unreasonable or unlawful. "Clear and satisfactory" is the same as "clear and convincing" and is a standard of proof greater than "by a preponderance of the evidence." *Chicago R.I. & P.R. Co. v. Nebraska State Ry. Comm.*, 85 Neb. 818, 826, 124 N.W. 477, 481 (1910); *Lofersky v. Needel*, 26 Ariz.App. 231, 234, 547 P.2d 502, 505 (1976).

In order to make such determinations and because of the broad scope of review, Arizona courts have interpreted A.R.S. § 40–254 as calling for a trial de novo in the Superior Court. See *Arizona Corporation Commission v. Fred Harvey Transportation Co.*, 95 Ariz. 185, 388 P.2d 236 (1964); *Lofersky v. Needel*, supra. The de novo trial is limited, however, because even though the court may consider new evidence, the Constitution restricts the level of the inquiry. *Simms v. Round Valley Light & Power Co.*, supra; *City of Tucson v. Citizens Utilities Water Co.*, 17 Ariz.App. 477, 498 P.2d 551 (1972).

"The Arizona courts have construed this statute to call for a trial de novo. 'De novo' usually means 'anew' or 'afresh' in the sense that a trial is conducted as if the suit were original; hence, the reviewing court in a de novo trial is usually free to exercise its independent judgment. For example, when reviewing commission decisions concerning certificates of public convenience and necessity, 'de novo' means that the trial court weighs evidence and draws an independent conclusion subject only to the constraint that the burden of proving the invalidity of the commission's conclusion is on the party adverse to the commission. As applied to superior court review of rate cases, however, 'de novo' has a different mean-

ing. In such cases, independent judicial review is prohibited—the court may disturb the commission's decision in a rate case only if it is not supported by substantial evidence, is arbitrary, or is otherwise unlawful. (footnotes omitted)" Rate Decisions: Judicial Review of the Arizona Corporation Commission, 19 Ariz.L.Rev. 488, 493 (1977).

The Superior Court may not reweigh the evidence and substitute its judgment for that of the Commission, but may disturb the Commission's rate decision only if it is not reasonably supported by the evidence, is arbitrary, or is otherwise unlawful. *Simms*, supra; *Citizens Utilities*, supra. The difference between traditional judicial review of administrative decisions and review of Corporation Commission rate decisions by the Superior Court is that in rate cases, the Superior Court may take additional evidence to determine if the Commission's rate decision should be upheld.

The Court of Appeals, while admitting that these were "murky waters never squarely addressed by the Arizona appellate courts," stated:

"Since the appeal to the superior court is a trial *de novo*, under what circumstances may the court take and consider evidence? The only logical answer is that there are two stages to review in the superior court. The first stage is a review of the record of proceedings before the Commission to determine if the findings and conclusions of the Commission are supported by substantial evidence and if that evidence is lawful. If the court determines that the findings and conclusions are so supported, the inquiry is at an end and the rate order of the Commission should be affirmed. If, however, one or more of the findings and conclusions are not so supported, the second stage of review, the limited trial *de novo*, comes into play. It is here that the court may take evidence both in support of, as well as in opposition to, the previously unsupported finding or conclusion. (footnote omitted) The limited trial *de novo* is, in

effect, a second opportunity by both the Commission, as well as the regulated company, to demonstrate that the rate order is either lawful or unlawful * * *." *Tucson Electric Power Company v. Arizona Corporation Commission*, 132 Ariz. 252, 255, 645 P.2d 243, 246 (App.1981).

We believe the procedure set forth by the Court of Appeals, while not without merit, is contrary to our previous decisions allowing a trial de novo in appeals to the Superior Court from the Corporation Commission in rate cases. Even though the findings and conclusions may, on their face, be reasonably supported by the evidence and lawful, the Superior Court may still receive additional evidence to show that the Commission was acting lawfully or unlawfully. A trial de novo allows all parties to be heard and to present evidence before a decision is made as to whether the findings and conclusion of the Corporation Commission are supported by substantial evidence. We agree with Judge Wren's dissent in the instant case:

" * * * Admittedly the nature of the judgment which may be rendered on review in superior court is far more restrictive in 'rate' cases than in 'certificate' cases. However, the whole concept of the de novo review provided for in A.R.S. § 40–254 is the right to introduce new evidence before any determination is made by the court. * * * " *Tucson Electric Power Company*, supra, 132 Ariz. at 260, 645 P.2d at 251.

■ It should be noted that an appellate court reviews the Superior Court's decision and not the Commission's, and a Superior Court's ruling on the Commission's decision will be upheld if supported by reasonable evidence. *Sun City Water*, supra, 113 Ariz. 464 at 465, 556 P.2d 1126 at 1127. If the Superior Court has disturbed the Commission's findings, an appellate court will examine the Superior Court's contrary conclusions to see if they are supported by clear and satisfactory evidence. A.R.S. § 40–254(E).

## INTRODUCTION OF NEW EVIDENCE

■ Because the Superior Court may hear the matter de novo, new evidence may be presented to the Superior Court. There is, however, a difference in evidence which was in existence or available at the time of the hearing by the Commission and evidence that comes into existence after the hearing. From an examination of the earlier cases, it would appear that evidence of events occurring subsequent to the Corporation Commission hearing is not admissible. *Church v. Arizona Corporation Commission*, 94 Ariz. 107, 382 P.2d 222 (1963); *Gibbons v. Arizona Corporation Commission*, 75 Ariz. 214, 254 P.2d 1024 (1953); *Simms*, supra.

■ The reasons are twofold. First, if the Superior Court is not to usurp the constitutional rate making prerogative of the Corporation Commission, the Commission must be given first opportunity to evaluate the merits of any claim for a rate adjustment. Second, if new circumstances arise that bring the Commission's findings into question, the proper procedure to follow is for the complaining party to apply for a rehearing or an adjustment by the Commission. See *Arizona Corporation Commission v. Arizona Public Service Co.*, supra. Statutory remedies that allow an aggrieved party to apply for a rehearing are available. A.R.S. § 40–253(A). We hold then that while the introduction of new evidence that was available at the time of the Commission hearing but otherwise not considered is admissible, evidence of circumstances or events that arise subsequent to proceedings before the Arizona Corporation Commission are inadmissible in the Superior Court for the purpose of determining the correctness of the Commission's decision. The parties may not impeach the Commission's decision with evidence that came into being after the Commission issued its ruling.

## THE DECISION

At the hearing before the Corporation Commission, the total value of Tucson Electric's properties was not seriously disputed. The major area of disagreement concerned differences in treatment between the sales

to the Tucson area customers within the jurisdiction of the Arizona Corporation Commission and sales of electricity to out-of-state customers, such as Southern California Edison, which are within the jurisdiction of the federal government through the Federal Energy Regulatory Commission (FERC).

The difference is important because utility rates are set to allow a recovery for all reasonable expenses, plus a return on investment (rate base). When electricity is sold out of Arizona to the FERC jurisdiction, Arizona users should not be required to subsidize capital investment needed to provide electricity to Southern California Edison through the FERC. To prevent this, the respective rate fixing bodies of the state and federal governments are charged with the responsibility of seeing to it that a utility is permitted a fair return only on the investment necessary for the delivery of electricity to the customers within their jurisdictions.

a. Firm versus interruptible

On its appeal to the Superior Court, Tucson Electric contested the Arizona Corporation Commission's findings that Tucson Electric had a "firm" commitment for the sale of energy to Southern California Edison Company. The Commission characterized these sales as "firm" because of a finding that the contract committed a portion of Tucson Electric's generating capacity to the sale. The company urged that sale of energy to Southern California Edison was a "non-firm" or "interruptible" commitment, in that sales were only for surplus energy. The distinction is important in that if the contract commitment was "interruptible," then an increase in demand for electricity from Arizona customers would allow Tucson Electric to interrupt its transmission of energy to out-of-state customers to satisfy an increased local demand. The sale to Southern California Edison would merely be a sale of surplus energy and not a commitment of a portion of the utility's generating capacity. When a utility commits its generating capacity to

satisfy certain contract obligations outside its normal operating area, it can be an indication that poor business judgment has been exercised in the past in that expenses were incurred in acquiring plant and equipment to satisfy a projected demand for electricity that never materialized. If such is the case, the local customers should not be asked to bear the burden for this error in judgment by suffering increased costs for the services they are forced to purchase from this protected industry.

The Superior Court set aside the Commission's conclusion that Tucson Electric's sales to Southern California Edison were firm as not being

"supported by substantial evidence, since the evidence showed that such sales should be more properly characterized as 'non-firm' or 'interruptible' with no portion of the Company's plant and demand related expenses being allocated to the [FERC] jurisdiction by reason thereof."

█ The Court of Appeals held that since the Commission's decision was "substantially and lawfully supported, the superior court should have affirmed the Commission decision on this point without taking new evidence." *Tucson Electric Power Company v. Arizona Corporation Commission,* supra, 132 Ariz. at 257, 645 P.2d at 248. As noted above, we disagree with the Court of Appeals in the determination that the Superior Court erred in taking new evidence. However, even though additional evidence was properly taken by the Superior Court, an examination of the record leads us to conclude that the Superior Court did not exercise the proper standard of review and usurped the constitutional authority of the Corporation Commission. Both the evidence presented to the Superior Court, and upon which the court apparently based its decision, and the evidence considered by the Commission through detailed and lengthy testimony, support the conclusion that the decision of the Commission was rationally based on evidence of substance. The Superior Court erred in finding that the Commission's determination was unreasonable or unlawful.

246

### b. Integrated versus disjointed transmission system

In its allocation of transmission plant and related expenses, the Commission found that Tucson Electric's transmission system was used in connection with sales for resale to FERC jurisdictional customers. If a utility needs to use its transmission system to deliver power to FERC jurisdictional customers, its system is said to be "integrated." The Commission held that:

"* * * notwithstanding what may have been theoretically possible in 1978, TEP's transmission system under the circumstances should be regarded as an integrated—not a disjointed—transmission system."

As such, the Commission went on to adopt a factor of 20.6% for allocation of transmission plant and related expenses to FERC jurisdictional customers.

Again the Court of Appeals found the Superior Court incorrectly admitted new evidence in finding that the Commission's ruling on this issue was "not supported by substantial evidence." Even with the consideration of additional testimony, we believe the Superior Court was incorrect in its findings. The testimony in the Superior Court centered mainly on the credibility of the witnesses before the Commission and the arguments digressed to which side had the more knowledgeable experts. The Superior Court obviously reweighed the evidence and found Tucson Electric's experts more credible. We believe the testimony before the Commission was sufficiently substantial to support its conclusion, and the Superior Court abused its discretion in disturbing the Commission's finding.

### c. Normalization of sales

When evaluating a request for a rate adjustment, the Corporation Commission adopts a test year from which to project the future capital expenditures and income needs of the utility. In this case, all parties agreed on 1978 as the test year. In that year, however, Tucson Electric Power only sold power to FERC jurisdictional customers during the last seven months. It was necessary, therefore, for the Commission to adjust the 1978 figures as if those sales were made during the entire year. This is called a "normalization" process.

In contesting the Commission's findings in the Superior Court, Tucson Electric introduced evidence of events occurring after the Commission decision that showed that the decision was unreasonable. When the company proved that sales in 1980 and 1981 did not match the Commission's projections, the Superior Court held that:

"The Commission's 'normalization' of certain sales for resale of the Company which actually occurred subsequent to the spring months of 1978 was not supported by substantial evidence and was not reasonable in view of the nature of such contracts."

Admission of evidence that arose subsequent to the Commission hearing was improper. The correct forum before which this evidence must be presented is the Commission itself. See *Arizona Corporation Commission v. Arizona Public Service Co.*, supra; A.R.S. § 40-253(A). The Corporation Commission has the sole authority to determine whether subsequent events merit a reexamination of its prior findings. The Superior Court's contrary conclusion was an abuse of discretion.

### d. Twelve month peak cycle

Related to its findings on "normalization," the Commission based its findings on sales over a twelve month period. Tucson Electric urged that the Commission adopt a four month base period. The company's position was that the Commission should focus on the four summer months in which demand for electricity was highest to determine a "normalized" figure for the entire year. When the four month period is used, the increased demand from Arizona customers in the summer results in a greater percentage of costs being allotted to them. The Commission gave the following rationale for adopting a twelve month base:

"TEP's contractual commitments for sales for resale should be treated as equivalent demands on TEP's system and

costs should be assigned between the ACC and FERC jurisdictions accordingly. Since the Company is heavily engaged in wholesale sales, the Applicant's argument that we should allocate based upon the 4–CP methodology because the system was designed for the summer peaking requirements of the Tucson area ignores, in our opinion, the realities which are presented to this Commission in 1979. The Company is involved in sales for re-sale in non-jurisdictional areas. * * * "

In determining that the Commission's decision was not supported by substantial evidence in this instance, the Superior Court admitted evidence of events that occurred subsequent to the Commission's decision and accordingly vacated the Commission's finding. As we noted above, the Superior Court abused its discretion in this regard. A review of the evidence presented to the Commission shows that the decision to adopt a twelve month peak methodology was rationally based on substantial evidence.

### e. Tax benefit allocation

■ At the Commission hearing, both parties agreed that a hypothetical tax expense should be allocated to Arizona jurisdictional customers. The Commission's decision to allow only "actual" taxes incurred by the company to be allocated was challenged by Tucson Electric. An examination of the record shows that the Superior Court was correct in finding that the Commission's decision was not supported by substantial evidence. Our conclusion is compelled by the fact that the Commission had *no* evidence to support its position. Additional evidence admitted in the Superior Court that was available to the Commission but never considered, shows that the Commission decision was not only unsupported by substantial evidence but was unsupported by any evidence whatsoever. The Superior Court did not abuse its discretion in vacating that portion of the Commission's decision which allocated only "actual" tax benefits.

### f. Return on common equity

Finally, Tucson Electric challenged the Commission's finding on the proper return on common equity. At the hearing, three witnesses offered three different opinions: One expert offered 13.5%; the company vice-president offered 15.25%; and another expert offered a middle figure of 13.8%. The Commission accepted the compromise figure of 13.8%.

■ The Superior Court found that the figure for return on common equity adopted by the Commission was not supported by substantial evidence based partly on evidence that showed that the company's stock was currently being sold for less than book value. The admission of this evidence was erroneous. Events that occur after the Commission decision are inadmissible for the purpose of Superior Court review. Substantial evidence supports the Commission's finding and it will not be disturbed.

### CONCLUSION

In disposing of this case, we are mindful that Tucson Electric has successfully petitioned the Arizona Corporation Commission for a rate increase during the time when its previous denial was proceeding through the appeal process to this court. The necessity to apply for a rehearing rather than await disposition through appeal may have been due in no small part to the length of time that is required before the appeal process can be exhausted. And although the delay cannot be justified, it should be recognized that delay in the process of judicial review is one reason the courts should not be encouraged to substitute their judgment for decisions by the Commission. Tucson Electric filed an application for a rate increase on 2 February 1979. After extensive hearings, the Commission issued its decision on 15 November 1979. The appeal hearing to the Superior Court was prompt enough, the hearing was held and judgment entered on 4 March 1980. Thereafter, appeal was to the Arizona Court of Appeals which handed down its opinion and decision on 2 April 1981. We granted review on 7 July 1981. In all, it has taken more than three years to decide this matter.

We do not abrogate the responsibility of the courts to oversee and protect the rights of the parties involved when we observe that the courts are simply ill-prepared to independently judge the merits of rate applications.

"* * * The unwisdom and impracticability of imposing upon the courts, in the first instance, this kind of litigation has frequently been adverted to by the courts. One court used this language: 'It is utterly impossible for a court to hear all cases similar to this, which requires from one to three months to hear the evidence, after the issues are formed. If this court were to do nothing else, it could not personally hear all such cases * * *'." *State v. Tucson Gas, Electric Light & Power Co.*, supra, 15 Ariz. at 305, 138 P. at 785.

The opinion of the Court of Appeals is vacated. The decision of the Superior Court is reversed in part and affirmed in part, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.

HOLOHAN, C. J., GORDON, V. C. J., and HAYS and FELDMAN, JJ., concur.