268 P.3d 1138

**BNSF RAILWAY COMPANY,**
a Delaware corporation,
Plaintiff/Appellant,

v.

**ARIZONA CORPORATION COMMISSION; Kristin K. Mayes, Chairman; Gary Pierce, Commissioner; Paul A. Newman, Commissioner; Sandra D. Kennedy, Commissioner; and Bob Stump, Commissioner, Defendants/Appellees.**

No. 1 CA–CV 11–0002.

Court of Appeals of Arizona,
Division 1, Department A.

Jan. 3, 2012.

Fennemore Craig, P.C. By William L. Thorpe, Theresa Dwyer–Federhar, Patrick J. Black, Phoenix, Attorneys for Appellant.

Arizona Corporation Commission, Legal Division By Charles H. Hains, Kimberly A. Ruht, Phoenix, Attorneys for Appellees.

## OPINION

BARKER, Judge.

¶ 1 BNSF Railway Company ("BNSF") appeals the judgment entered by the superior court affirming an October 21, 2009 order of the Arizona Corporation Commission ("Commission"). BNSF argues the superior court erred because the Commission's authority to approve or deny the installation of railroad wayside horns was preempted by federal law regulating the use of audible warnings at railroad crossings. For the following reasons, we agree with the superior court's determination and affirm.

### Facts and Procedural History

¶ 2 On February 19, 2009, the City of Flagstaff ("City") filed an application for approval to upgrade two crossings by installing additional audible warning devices, wayside horns. The City sought to create a Quiet Zone in accordance with title 49, section 222 of the Code of Federal Regulations ("C.F.R."). The two crossings, the Steves Boulevard crossing and the Fanning Drive crossing, would be included in this Quiet Zone. The application also indicated that three other crossings would be included in the Quiet Zone; however, they would not require modifications subject to the Commission's approval.

¶ 3 A wayside horn is a "stationary horn located at a highway-rail grade crossing, designed to provide, upon the approach of a locomotive or train, audible warning to oncoming motorists." 49 C.F.R. § 222.9. The horn is a digital recording of an actual train horn that plays from a pole mounted at the crossing as the locomotive approaches. *See* 49 C.F.R. §§ 222.59, 222 App. E. The signal given by a wayside horn obviates the need for a locomotive to blow its horn as it approaches a crossing and lowers the noise pollution in surrounding areas. 49 C.F.R. § 222.59.

¶ 4 Prior to filing the application, the City had complied with federal requirements regarding implementing a Quiet Zone. The City provided a notice of intent to BNSF (the railroad operating over the crossing), the Arizona Department of Transportation (the state agency responsible for highway and road safety), and the Arizona Corporation Commission (the state agency responsible for grade crossing safety). The City would fund the project.

¶ 5 On February 27, the Commission issued a procedural order scheduling a hearing to consider the City's application. In this procedural order, the Commission directed that BNSF appear as a Respondent.[1] As the railroad company operating the tracks, and as a public service corporation, BNSF is subject to the Commission's jurisdiction with regard to the safety of the crossings. On March 27, the Commission's Safety Division ("Staff") recommended approving the City's application.

¶ 6 On April 6, the City filed proof of having sent notice of the application to all statutorily required parties, and the matter was opened to public comment.[2] However, after being made aware that alterations may have already been made to the Steves and Fanning crossings, the Commission continued the hearings indefinitely to investigate. At a hearing on May 6, the City stated that equipment for the wayside horns at the Steves and Fanning crossings had been installed, but that the horns were not yet operational. To formulate recommendations for the proper way to address the premature installation of the wayside horns, the Com-

mission continued further hearings. The Commission also directed the City and Staff, and invited BNSF, to file briefs addressing questions about the safety implications of the changes to the crossings and the nature of the Commission's authority over decisions regarding sounding horns at the crossings. Pending the Commission's approval of the application, the City removed the horns on May 15, 2009.

¶ 7 On July 8, 2009, the Commission held a full evidentiary hearing at which the City, BNSF, and Staff were represented by counsel. All parties presented testimony and were asked to file various late-filed exhibits addressing aspects of the crossings. The City, BNSF, and Staff were also directed to file post-hearing briefs regarding preemption and the City's compliance with the requirements for designation of a Quiet Zone. In its brief, BNSF argued that the Commission did not have jurisdiction to approve or deny installation of wayside horns at the crossing because of federal preemption under the Train Horn Rules, a federal scheme aimed at achieving national uniformity in railroad safety. 49 C.F.R. pts. 222 and 229. Staff argued that while the Train Horn Rules would preempt the Commission from regulating the sounding of horns or the safety of the other three crossings in the Quiet Zone that did not require the horn installation, the Commission did have jurisdiction to approve or deny the modifications at the Steves and Fanning crossings.

¶ 8 On October 21, 2009, the Commission issued an opinion and order approving the City's application to modify the Steves and

---

1. The procedural order states:

    The Commission now issues this Procedural Order to govern the preparation and conduct of this proceeding.

    IT IS THEREFORE ORDERED that the City's application shall be considered an application for BNSF to upgrade existing crossings pursuant to A.R.S. §§ 40–337 *et seq.*

    IT IS FURTHER ORDERED that BNSF shall be considered as the Respondent in this proceeding.

    Under Arizona Revised Statutes ("A.R.S.") section 40–336 (2004), the Commission has authority to require public service corporations to use appropriate safety devices; it may "prescribe [their] installation, use, maintenance and operation."

2. A public authority installing a wayside horn at a crossing in a Quiet Zone is required to provide written notice indicating the date the horn will be operational and the location of the crossing "at least 21 days in advance." 49 C.F.R. § 222.59. There are no written Commission rules setting out the procedures required for an application to modify a crossing filed in conjunction with installing wayside horns as part of a Quiet Zone under the federal regulations. Although there is no timeline expressed, the Commission's decision makes it clear that an application must be filed before the horns, or any modification, are installed.

Fanning crossings. The Commission made "no finding as to the safety of the crossings at Beaver Street and San Francisco Street once the Quiet Zone is established." In the opinion, the Commission recited its authority under A.R.S. § 40–336 over the installation, use, and modification of safety or other devices at grade crossings. The opinion also noted the Commission's "exclusive power to determine and prescribe the manner and the terms of installation, operation, maintenance, use, and protection of each crossing."

¶ 9 The opinion considered whether the Commission was preempted from regulating crossings under the Train Horn Rules. The Commission concluded that its authority was preempted in part and not preempted in part. Specifically, it concluded that

> the Train Horn Rules preempt the Commission's authority to require that train horns be sounded at public highway-rail grade crossings and/or to impose requirements related to the use of safety measures specifically to accommodate for the silencing of train horns at such crossing.

It also concluded, however, that

> the Train Horn Rules do *not* preempt the Commission's "administrative procedures" regarding applications for the alteration of public at-grade crossings included or to be included in Quiet Zones, to the extent that the alterations contemplated involve modification or installation of "engineering improvements." Thus, the Commission retains the authority to approve or deny applications for the alteration of such crossings to the extent that the alterations contemplated involve modification or installation of engineering improvements.

In reaching this conclusion, the Commission relied upon 49 C.F.R. § 222.7(e), which provides:

> Issuance of this part does not constitute federal preemption of administrative procedures required under State law regarding the modification or installation of engineering improvements at highway-rail grade crossings.

49 C.F.R. § 222.7(e). The Commission determined that the hearing held on July 8 was an administrative procedure and that the wayside horns are engineering improvements.

¶ 10 Following the Commission's opinion and order, BNSF filed an application for rehearing. The Commission did not act on the application for rehearing, and it was denied by operation of law. BNSF then filed a complaint in superior court challenging the Commission's decision. BNSF brought the action for judicial review under A.R.S. § 40–254 and asked the court to vacate the order or "declare that certain conclusions of law included in the Order are incorrect as a matter of law."

¶ 11 In the superior court, BNSF again argued that the Commission lacked jurisdiction to issue the order because federal law preempted the Commission's authority. The Commission challenged BNSF's standing to appeal the Commission's order as an aggrieved party because BNSF had supported the installation of wayside horns at the Steves and Fanning crossings and the Commission approved the application. On November 17, 2010, the court affirmed the Commission's order without indicating the basis for its decision. BNSF timely appealed the judgment. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

### Discussion

### 1. Standard of Review

¶ 12 BNSF asks this court to reverse both the superior court's judgment and the Commission's order affirmed by that judgment. On appeal from a superior court judgment reviewing an order of the Commission, we review the superior court's decision, not the underlying decision of the Commission. *Babe Invs. v. Ariz. Corp. Comm'n*, 189 Ariz. 147, 150, 939 P.2d 425, 428 (App.1997). Where parties are appealing the court's grant of summary judgment, we view the facts and reasonable inferences in a light most favorable to "the party against whom judgment was granted." *Burlington N. & Santa Fe Ry. Co. v. Ariz. Corp. Comm'n*, 198 Ariz. 604, 606, ¶ 9, 12 P.3d 1208, 1211 (App. 2000). "If no genuine issues of material disputed facts remain and the moving party is entitled to judgment as a matter of law, we must affirm the decision of the trial court."

*Tonto Creek Estates Homeowner's Ass'n v. Ariz. Corp. Comm'n,* 177 Ariz. 49, 55, 864 P.2d 1081, 1087 (App.1993). However, we can draw our "own legal conclusions[,] ... determine whether an agency erred in its determination of law, [and] substitute our judgment for agency conclusions regarding the legal effect of its factual findings." *Sanders v. Novick,* 151 Ariz. 606, 608, 729 P.2d 960, 962 (App.1986) (citations omitted). "[T]he court of appeals will affirm the trial court's decision if it is correct for any reasons." *Ariz. Bd. of Regents for Univ. of Ariz. v. State ex rel. State of Ariz. Pub. Safety Ret. Fund Manager Adm'r,* 160 Ariz. 150, 154, 771 P.2d 880, 884 (App.1989).

## 2. Standing

■ ¶ 13 As a preliminary matter, the Commission argues that BNSF does not have standing to bring this appeal because BNSF is not an aggrieved party. The City filed an application to install wayside horns as additional warning devices at the Steves and Fanning railroad crossings. BNSF was in favor of the City's request. After an extended evidentiary hearing, the Commission ordered the City's application be approved. Consequently, the Commission argues, the superior court's judgment affirming the Commission's order does not aggrieve BNSF in any way. However, A.R.S. § 40–254 grants to "any party in interest" who is "dissatisfied with an order or decision of the commission," the right to challenge that order. As the railroad operating over the crossing and the public service corporation over which the Commission has jurisdiction with respect to safety of crossings, BNSF is a "party in interest." In a procedural order on February 27, 2009, the Commission ordered that the City's application be considered an application for BNSF to upgrade the crossings and that BNSF be considered the Respondent in the proceedings.

¶ 14 The reason BNSF is dissatisfied with the Commission's order is that it objected to *any* jurisdiction being exercised by the Commission. BNSF's argument before the Commission and in the trial court, as it is now, is that the Commission was preempted from any action. BNSF has been harmed, from its perspective, by having to engage in lengthy and expensive Commission hearings it considered both unnecessary and unlawful. BNSF specifically challenges the finding that installation of a wayside horn is a modification or installation of engineering improvements under 49 C.F.R. § 222.7(e). Thus, BNSF has standing.

## 3. Preemption

¶ 15 BNSF argues that the Commission did not have jurisdiction to enter its order because federal law concerning matters of railroad safety regulation expressly preempts the Commission. To achieve national uniformity of regulation, Congress has directed that "[l]aws, regulations, and orders related to railroad safety and ... security shall be nationally uniform to the extent practicable." [3] 49 U.S.C.A. § 20106(a)(1) (2011).

¶ 16 The Federal Railroad Administration ("FRA") promulgated the Train Horn Rules to "provide for safety at public highway-rail grade crossings by requiring locomotive horn use at public highway-rail grade crossings except in [Q]uiet [Z]ones." 49 C.F.R. § 222.1 (2006). The regulations prescribe standards for sounding locomotive horns as trains approach and pass through public highway-rail grade crossings and standards for creating and maintaining Quiet Zones where sounding a horn is not required. 49 C.F.R. § 222.3. The regulations preempt "any State law, rule, regulation, or order governing the sounding of the locomotive horn at public highway-rail grade crossings." 49 C.F.R. § 222.7(a). But the regulations expressly provide that their issuance "does *not constitute federal preemption* of administrative procedures required under State law regarding the modification or installation of engineering improvements at highway-rail grade crossings." 49 C.F.R. § 222.7(e) (emphasis added).[4]

**3.** Despite this general preemption, States "may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security" when certain conditions are met. 49 U.S.C.A. § 20106(A)(2).

**4.** In pertinent part the regulations provide as follows:

¶ 17 Federal law clearly occupies the field of railroad safety regarding the sounding of locomotive horns. When indicating the scope of preemption, the regulation repeatedly focuses on the sounding of locomotive horns. *See, e.g.,* 49 C.F.R. § 222.7(a) (stating that preemption applies to any State law "governing the *sounding* of the locomotive horn") (emphasis added); 49 C.F.R. § 222.7(d) (emphasizing that the regulation federally preempts any State law regarding "the *sounding* of the locomotive horn in relation to the use of [safety] measures") (emphasis added). On the other hand, the regulation does not preempt State laws regarding safety measures that relate to traffic control or State administrative procedures related to modifications or installation of improvements to the crossings. 49 C.F.R. § 222.7(d), (e).

¶ 18 As we have set forth above, the Commission's order, which was affirmed by the superior court, recognizes the distinction between the sounding of the horn (for which regulation is preempted) and the actual modifications necessary at a highway-rail crossing (which are not preempted if they qualify under 49 C.F.R. § 222.7(e)). Thus, the issue of preemption in this case distills down to whether the portions of the Commission's order for which it found jurisdiction are "[1] administrative procedures required under State law regarding [2] the modification or installation of engineering improvements." *See* 49 C.F.R. § 222.7(e). BNSF contends they are not. We disagree.

### a. The Commission's Actions Are "Administrative Procedures."

¶ 19 To consider whether the Commission's actions in this case are "administrative procedures required under State law" we

(a) [I]ssuance of this part preempts any State law, rule, regulation, or order governing the sounding of the locomotive horn at public highway-rail grade crossings, in accordance with 49 U.S.C. 20106.

. . . .

(d) Inclusion of SSMs and ASMs in this part or approved subsequent to issuance of this part does not constitute preemption of State law regarding whether those measures may be used for traffic control. Individual states may continue to determine whether specific SSMs and ASMs are appropriate traffic control measures for that State, consistent with Federal

must examine Arizona's statutory scheme. That scheme provides:

> A. *No public highway or street shall be constructed across the track of any railroad at grade,* nor shall the track of any railroad corporation be constructed across the track of any other railroad at grade, *without the permission of the commission,* but this provision shall not apply to the replacement of lawfully existing tracks. The commission may refuse permission or grant it upon such terms and conditions as it prescribes.

A.R.S. § 40–337(A) (emphasis added). Thus, the Commission's permission is required before a public highway, street, or track of any railroad corporation can be constructed across the track of a railroad at grade. The Commission has the "exclusive power" to determine the manner of the crossing "and the terms of installation, operation, maintenance, use and protection" of the crossing. A.R.S. § 40–337(B)(1). This power extends to authority to "*alter* or abolish crossings." *Id.* at (B)(2) (emphasis added). The Commission is obligated to order installation of a safety device if it finds that a crossing creates a hazardous condition that threatens the public health. *See Maricopa County v. Corp. Comm'n of Arizona,* 79 Ariz. 307, 313, 289 P.2d 183, 186 (1955) (emphasis added). The Commission's authority over automatic warning devices at crossings is expressly addressed as follows:

> A. The commission may determine, after a public hearing, whether any particular crossing of a railroad and a public highway or street is sufficiently hazardous as to require the installation of automatic warning signals or devices at such crossing,

Highway Administration regulation and the MUTCD. However, except for the SSMs and ASMs implemented at highway-rail grade crossings described in § 222.3(c) of this part, inclusion of SSMs and ASMs in this part does constitute federal preemption of State law concerning the sounding of the locomotive horn in relation to the use of those measures.

(e) Issuance of this part does not constitute federal preemption of administrative procedures required under State law regarding the modification or installation of engineering improvements in highway-rail grade crossings.

49 C.F.R. § 222.7.

provided, that a public hearing shall not be required if the parties in interest have entered into an agreement for the construction of such crossing and for the apportionment between them of the cost of acquiring and installing such automatic warning signals or devices and provided further such agreement assesses the cost at not to exceed the amounts prescribed in subsection B.

B.   If the commission finds that any crossing requires the installation of automatic warning signals or devices, it shall order such installation . . .

A.R.S § 40–337.01.

¶ 20 Here, the City filed an application for approval to upgrade the existing Steves and Fanning crossings by installing wayside horns, additional warning devices. Pursuant to its authority under A.R.S. §§ 40–336 and –337, the Commission held an evidentiary hearing and eventually approved the City's application.   The evidentiary hearing was more complicated because the wayside horns had been prematurely installed.   During the proceedings, the Commission reviewed the safety of all of the crossings in question, both the Steves and Fanning crossings where wayside horns were to be installed, and the Beaver, San Francisco, and Enterprise crossings also to be included in the Quiet Zone. Although a number of issues surrounding the changes to the crossings were considered, the Commission focused on whether "it would be a safety hazard to have wayside horns installed before they were operational."   Ultimately, the Commission determined that the premature installation "could have posed a safety hazard as a result of the confusion"; however, no penalties were assessed because the premature installation was found to have been unintentional and the installed wayside horns had been removed from the crossings pending the Commission's approval.

¶ 21 BNSF argues that the Commission's procedure for issuing the order was a judicial or quasi-judicial procedure and thus not an "administrative procedure" exempted from federal preemption under 49 C.F.R. § 222.7(e).   BNSF seeks to analogize the proceedings at issue with those involved in rate cases.   Here, Staff conducted an independent investigation of the City's application, all parties asserted factual and legal positions, the Commission held a full evidentiary hearing, and the Commission rendered a decision, making findings of fact and conclusions of law.   However, there is no indication that these proceedings cannot fit within the "administrative procedure" preemption exception of 49 C.F.R. § 222.7(e).

¶ 22 The Rules do not define "administrative procedures" and do not make any distinctions between an administrative agency acting in a quasi-judicial capacity or in a ministerial capacity.   *See id.* BNSF cites a number of cases stating that when the Commission gathers evidence and renders a decision adjudicating a dispute, it acts judicially or quasi-judicially.   These cases are rate cases focusing on the procedures for reviewing the Commission's rate-making decisions or the due process implications of such proceedings.   *See, e.g., State ex rel. Corbin v. Ariz. Corp. Comm'n,* 143 Ariz. 219, 693 P.2d 362 (App.1984); *Ariz. Pub. Serv. Co. v. S. Union Gas Co.,* 76 Ariz. 373, 265 P.2d 435 (1954).   They do not resolve the specific question of whether 49 C.F.R. § 222.7(e) purported to distinguish between the different capacities in which the Commission acts for the purposes of preemption.[5]

¶ 23 The relevant section, 49 C.F.R. § 222.7, focuses on the distinction between State action seeking to govern the sounding of locomotive horns at public crossings and State action addressing traffic control, or modifications or installations of public cross-

---

**5.**   The Commission is atypical in that it is a constitutional entity "which owes its existence to provisions in the organic law of this state," rather than an administrative agency created by the legislature.   *Miller v. Ariz. Corp. Comm'n,* 227 Ariz. 21, 24, ¶ 12, 251 P.3d 400, 403 (App.2011).   Similar to its counterparts in most states, however, the Commission "exercises its executive, administrative function in adopting rules and regu-

lations, its judicial jurisdiction in adjudicating grievances, and its legislative power in ratemaking." *Id.* at 25, ¶ 12, 251 P.3d at 404 (quoting *Ariz. Corp. Comm'n v. State ex rel. Woods,* 171 Ariz. 286, 291, 830 P.2d 807, 812 (1992)). Focusing on the Commission's actions rather than its labels, we conclude it acted within the scope contemplated by the preemption exception for "administrative agencies."

ings. The federal rules are concerned with the substance of the State's action, not the form. As noted, the Commission did engage in an extensive evidentiary hearing regarding the City's application to install the wayside horns. That hearing was held to determine whether the wayside horns had been installed prematurely and whether that premature installation presented safety hazards at the crossings. The Commission exercised its jurisdiction to approve installation of the wayside horns "because they represent a change to the warning devices at the crossing."[6] *See Maricopa Cnty.*, 79 Ariz. at 312, 289 P.2d at 186 (stating that the Commission has authority to order installation, use, maintenance, and operation of appropriate safety devices). The administrative procedure at issue is the approval or denial of a modification at a crossing; the procedural anomaly in this case—taking a detour into additional hearings to verify whether the wayside horns had been prematurely installed without Commission approval—does not alter the character of the proceedings.[7] Action taken by the Commission to investigate and approve or deny installation of modifications to crossings, pursuant to statutorily granted authority, maintains its character as an administrative procedure and as such fits within the preemption exemption.

¶ 24 Finally, it would seem unusual that the drafters of the Train Horn Rules did not consider the scope of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, *et seq.*, when including the reference to "administrative procedures" in 49 C.F.R. § 222.7(e). The APA specifically permits a hearing process as part of its administrative procedures. *See, e.g.*, 5 U.S.C. §§ 554, 556–58. The APA expressly provides for ALJs, hearings, and

the taking of and ruling on evidence. *Id.* Thus, we see nothing inconsistent with accepting that same administrative framework when the State statute at issue grants such power and authority to the Commission.

¶ 25 Additionally, we are not persuaded by the argument that because the Commission has powers greater than a typical administrative agency, it should not be considered an administrative agency for these purposes. *Polaris Int'l Metals Corp. v. Ariz. Corp. Comm'n*, 133 Ariz. 500, 506, 652 P.2d 1023, 1029 (1982) (referring to the Commission "as a fourth branch of government in Arizona"). Although it may function as a "super agency," the Commission does not lose its character as an administrative agency as contemplated under § 222.7(e).

### b. The Wayside Horns Are "Engineering Improvements."

█ ¶ 26 BNSF next argues that the Commission's action was preempted because the installation of wayside horns is not a "modification or installation of engineering improvements at highway-rail grade crossings" under 49 C.F.R. § 222.7(e). Focusing on the fact that the "FRA has determined that a wayside horn will be considered a one-for-one substitute for the locomotive horn," BNSF reasons that the horns cannot be a modification or improvement because they are an exact substitute for locomotive horns. *See* 49 C.F.R. pt. 222, App. C. BNSF further concludes that if the exception to preemption does not apply to installation of wayside horns, then the language of 49 C.F.R. § 222.59, governing the use of a wayside horn, indicates that the federal rules preempt the Commission.[8]

¶ 27 As defined, a wayside horn is a "stationary horn located at a highway-rail grade

---

6. The Commission recognized that it would be preempted from requiring train horns to be sounded at the crossings or from "imposing requirements related to the use of safety measures specifically to accommodate for the silencing of train horns." It expressly did not render any decisions regarding the sounding of the wayside horns.

7. We would not expect this procedural detour to occur in the future. Nor would we expect the need for expansive briefing—as done here—on the line between what is preempted and what is not. Those issues are largely resolved by the

issuance of this opinion. Thus, addressing BNSF's concern, we would expect that any proceeding conducted by the Commission with respect to the approval of wayside horns would not be needlessly time consuming and expensive.

8. We recognize that there are federal regulations that would preempt State action seeking to address the implementation of wayside horns in conjunction with creating Quiet Zones. *See* 49 C.F.R. § 222.37(b) ("A public authority may establish Quiet Zones irrespective of State laws covering the subject matter of sounding or silencing locomotive horns at public highway-rail

crossing, designed to provide, upon the approach of a locomotive or train, audible warning to oncoming motorists." 49 C.F.R. § 222.9. Wayside horns sound just like a locomotive horn: they are a digital recording of an actual locomotive horn that cycles through a standard whistle pattern as the approaching train signals the crossing's automatic warning system. The wayside horn is designed to reduce noise pollution by increasing the precision of the sounding horn; it must provide a sound level between 92 and 110 decibels when measured 100 feet from the center of the track, it must sound a minimum of 15 seconds before the train enters the crossing, and it must be directed at approaching traffic. 49 C.F.R. § 222 App. E. According to the federal rules, a wayside horn "may be used in lieu of a locomotive horn at any highway-rail grade crossing equipped with an active warning system consisting of, at a minimum, flashing lights and gates." 49 C.F.R. § 222.59(a)(1).

¶ 28 BNSF contends that § 222.59(a), permitting the use of a wayside horn, would be violated if the Commission retained jurisdiction to reject an application for its use. We agree in part and disagree in part. As the Commission pointed out, it has no jurisdiction to regulate the sounding of the horn. It is preempted. Were the Commission to reject an application based on its belief that a horn actually on a train was more effective than a wayside horn, the Commission would have exceeded its bounds.

¶ 29 On the other hand, installing a wayside horn involves physical alterations to crossings for which the Commission certainly has jurisdiction. For instance, the Commission found that "each horn [is] to be mounted on a vertical pole, approximately 25 feet from the center of the tracks and angled down toward the intersections approaching the crossings." Assume the City or BNSF determined to put the pole upon which the horn was placed in the middle of the roadway, causing a distinct safety hazard to vehicles utilizing the crossing. Clearly, the Commis-

sion would have jurisdiction over the modification and its effect on the crossing's safety.

¶ 30 In this case, the Commission made the following findings:

The crossings at both [locations] are currently equipped with cantilevers, automatic gates, flashing lights and bells. The City proposes to upgrade each crossing by installing wayside horns, new sidewalk construction conforming to the Americans With Disabilities Act ("ADA") requirements, and "No Train Horn" signs.

Making certain that these modifications (1) are undertaken in a safe manner and (2) provide for physical safety at the crossing after completion (with the exception of the actual sounding of the horn) is precisely what the federal regulations permit State authorities to do. To the extent that it did this, the Commission was within its authority.

¶ 31 As to whether these changes constitute "engineering improvements," we think it would take an over-technical reading of that language to conclude otherwise. Though the wayside horns may be viewed as a "one-for-one substitute" to an on-board horn, the City certainly must have viewed it as a form of "improvement" or it would not have requested the change. Additionally, the wayside horns are "improvements" because they constitute additional physical mechanisms integrally connected to the crossing site and its safety mechanisms. *See, e.g.,* Dictionary.com ("Improvement: . . . 2. a change or addition by which a thing is improved . . . 4. a bringing into a more valuable or desirable condition, as of land or real property; betterment. 5. something done or added to real property that increases its real value.") (Dec. 9, 2011, 4:11 PM), http://dictionary.reference.com/browse/improvement. Staff described the wayside horns as follows, giving a description that accurately portrays their use:

Wayside horns are an innovative railroad signaling device that significantly improves safety for motorists and pedestrians and dramatically reduces the amount of noise pollution created by train horns along rail corridors in populated areas. Wayside

---

grade crossings."); 49 C.F.R. § 222.59(a) ("A wayside horn conforming to the requirements of appendix E of this part may be used in lieu of a locomotive horn at any highway-rail grade crossing."). However, as we have discussed at length,

the section addressing preemption specifically reserves "administrative procedures required under State law regarding the modification or installation of engineering improvements" from federal preemption. 49 C.F.R. § 222.7(e).

horns are a stationary horn system activated by the railroad-highway grade crossing warning system. Wayside horns are mounted at the crossing, rather than on the locomotive, to deliver a longer, louder, more consistent audible warning to motorists and pedestrians while eliminating noise pollution in neighborhoods for more than 1/2 mile along the rail corridor.

Clearly, applying any common-sense definition, the installation of a wayside horn constitutes the installation of an "engineering improvement."

### 4. Fees

¶ 32 BNSF requests an award of its attorneys' fees pursuant to A.R.S. § 12–348. Because BNSF has not prevailed on appeal, we decline to award fees.

### Conclusion

¶ 33 For the reasons stated above, we determine that the Commission was not preempted from approving the installation of wayside horns. Accordingly, we affirm the superior court's order.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge and LAWRENCE F. WINTHROP, Chief Judge.