498 P.2d 551

The CITY OF TUCSON, a municipal corporation, et al., Appellants,

v.

CITIZENS UTILITIES WATER COMPANY of Arizona, a corporation, Appellee.

No. 1 CA–CIV 1541.

Court of Appeals of Arizona, Division 1, Department A.

June 29, 1972.

Review Denied Oct. 3, 1972.

Herbert E. Williams, City Atty., The City of Tucson, and Chandler, Tullar, Udall & Richmond, By Thomas Chandler, Tucson, for appellant, The City of Tucson.

Gary K. Nelson, Atty. Gen., by Charles S. Pierson, Asst. Atty. Gen., Phoenix, for appellant, The Arizona Corp. Comm.

Evans, Kitchel & Jenckes, by Earl H. Carroll, Phoenix, for appellee.

CASE, Judge.

This is an appeal from a judgment of the Maricopa County Superior Court vacating and remanding the Arizona Corporation Commission's Decision No. 40151. The appellants, City of Tucson, hereinafter designated the City, and the Arizona Corporation Commission, hereinafter designated the Commission, contend that the trial court erred in setting aside the Commission's decision and in authorizing the appellee, Citizens Utilities Water Company of Arizona, hereinafter designated Citizens, to set its own temporary water rates.

Citizens has been certified by the Commission to distribute water as a public utility in the Tucson area of Pima County, Arizona. At the time of the rate proceeding before the Commission, Citizens was servicing more than 3,300 customers and its service areas were located to the east, southeast and northwest of the City of Tucson. A number of its services were also located within the City of Tucson. Citizens' operation consisted of a number of separate systems within the service area. The overall service area was made up of areas both from the point of view of actual operational service as well as geographic areas.

Citizens filed an application with the Commission for a water rate adjustment on 3 January 1968. Prior to the hearing on the application of January 1968, Citizens had been charging different rates for users in the different service areas. Both the interim rate and the permanent rate applied one set of rates to all users. The last prior rate proceeding for any of Citizens' operations was in 1960. Citizens requested in its application that the:

"Commission find and determine the fair value of the companies properties in Pima County devoted to public service and that a reasonable and lawful rate of return be granted to Petitioner upon the fair value of its property as determined by the commission, with a rate schedule to be thereafter approved which will produce the additional revenues to which Petitioner is entitled."

Citizens' application also contained a request "that the application be considered on an interim basis pending final hearing and determination, with an interim rate adjustment to be approved" by the Commission.

The interim rate hearing was held on 29 February 1968 at Tucson, Arizona, at which time Citizens appeared and presented evidence in support of their application. After hearing the evidence presented by Citizens and the testimony of a Commission engineer, the Commission made an interim order permitting Citizens to charge $5.85 monthly service for 5/8" and 3/4" meters and smaller, $9.85 for 1" meters, $13.85 for 1½" meters or larger. Citizens' customers were not entitled to consume any water for the basic charge and had to pay a consumption charge of $.40 per 1,000 gallons for all water consumed.

The interim rates remained in effect for approximately one year and thereafter a public hearing was held so that the Commission could establish a permanent rate. Evidence was presented by both the City and Citizens to support their respective positions. Testimony and exhibits were also presented by the Commission staff who had done their own investigation.

On 6 August 1969 the Commission entered its decision, including a dissenting opinion of Commission Chairman Milton

J. Husky. The majority of the Commission found:

"1. That the fair value base for the utility plant in service as of March 3, 1968 was $1,901,209.

2. That a 5.2% rate of return on the fair value rate base is reasonable and just.

3. That the interim rates were excessive by 14%."

The Commission went on to fix a permanent rate schedule. The rates and charges were $5.75 per month minimum for which the user could use 3,000 gallons of water, $.40 per 1,000 for the next 22,000 gallons and $.25 per 1,000 for all water used over 25,000 gallons. The Commission's decision established rates lower than the interim rates and Citizens was ordered to make a refund as a credit on the September 1969 bills in the amount of 14% of the billings for the period 1 April 1968 through and including 21 July 1969, this being the period that the interim rates were in effect.

Thereafter, Citizens filed a timely application for rehearing so as to suspend the effective date of the decision until the application for rehearing had been acted upon by the Commission. The Commission denied the application for rehearing without further hearing.

On 27 August 1969 Citizens filed a petition for writ of prohibition and a writ of certiorari in the Superior Court of Maricopa County. On 28 August 1969 the Court entered its order for writ of certiorari which in effect prohibited the Commission from enforcing its decision and stayed all of the Commission's actions on its decision.

On 29 August 1969 Citizens instituted suit against the Commission and its members seeking to set aside the Commission's order. The petition for writ of prohibition or writ of certiorari and the action to set aside the rate order were consolidated and thereafter the City of Tucson intervened.

The matter was tried without a jury and following the trial, the Court made its findings of fact and conclusions of law and entered judgment setting aside the Commission's decision and permanently enjoining the Commission from enforcing it. The cause was remanded to the Commission for a proper determination of a fair value rate base and lawful rate of return. Pending a final determination, the trial court authorized Citizens to make the following charges:

"SERVICE CHARGES: No water supplied
5/8" x 3/4" meters
    and smaller.................. $6.75 per month
One Inch Meters...............$12.00 per month
One and one-half
    Inch Meters................ $17.00 per month
Two Inch Meters.............. $22.00 per month
Three Inch Meters............ $32.00 per month
CONSUMPTION CHARGE:...... $ 0.70 per thousand gallons"

After appropriate post-trial motions were denied, this appeal by the City and the Commission followed.

The question presented for review is whether the trial court could, as a matter of law, find that there was no substantial evidence presented to the Commission which would justify the conclusion in its order that the fair value rate base for Citizens Utility Plant in service on 31 March 1968 was $1,901,209 and that a reasonable rate of return on the rate base was 5.2%. We would answer in the affirmative.

We deem it essential to this appeal that we discuss the scope of judicial review in relation to a rate case.

The Corporation Commission in Arizona is unique in that its constitutional base, Article XV, A.R.S., as interpreted, gives the Commission legislative, judicial, administrative and executive functions. State v. Tucson Gas, Electric Light & Power Co., 15 Ariz. 294, 138 P. 781 (1914).

In Simms v. Round. Valley Light & Power Company, 80 Ariz. 145, 155, 294 P.2d 378, 384 (1956), in discussing the trial court's function in reviewing a Commission's rate making decision, the Court stated:

" . . . The court may consider the evidence only for the purpose of deter-

mining whether the commission in *its* finding of fair value acted unreasonably in that its finding has *no substantial support* in the evidence, is arbitrary or otherwise unlawful." (emphasis ours)

The Court went on to delineate the power of the Superior Court in reviewing the Commission's rate making determination as follows:

". . . the courts cannot disturb the commission's ultimate conclusion or findings of fact in arriving at such conclusion when the same is supported by substantial evidence, is not arbitrarily, or is not otherwise unlawful . . ." 294 P.2d at 384.

In Simms, supra, the Supreme Court noted review by the Superior Court was not a true trial de novo in that evidence presented to the Superior Court can only be used to determine "whether the commission in its finding of fair value acted unreasonably in that its finding has no substantial support in the evidence is arbitrary or otherwise unlawful."

In concluding their opinion, the Simms court stated:

"We are unable to say and the trial court cannot be allowed to say that the commission's finding of fair value is without substantial support in the evidence or is arbitrary." 294 P.2d at 385.

Thus, the scope of appellate review appears to be coextensive with the Superior Court's scope, with the exception of hearing new evidence.

The Court in Simms, supra, also discussed the nature of a rate hearing and noted that a rate should allow the company whose property is committed to public service to earn a "fair and reasonable reward" while also being reasonable from the standpoint of the public interest. In addition, the Court held that under our Constitution:

". . . the commission is required to find *fair value* of the company's property and used such finding as a rate base for the purpose of calculating what are just and reasonable rates." 294 P.2d at 382. (emphasis ours)

The Court reiterated that fair value meant "value of properties at the time of the inquiry", 294 P.2d at 382, which figure will necessarily reflect the current cost of construction.

The methods used to establish the fair value rate base have not been clearly delineated. However, the Court in Simms, supra, did set forth general guidelines as follows:

". . . In the absence of an admitted change in material and labor costs since construction, the original costs less depreciation of the physical plant plus working capital and other items of value necessary to render the service is recognized as a fair guide. McCardle v. Indianapolis Water Co., 1926, 272 U.S. 400, 47 S.Ct. 144, 71 L.Ed. 316; Los Angeles Gas & Electric Corp. v. Railroad Commission, 1933, 289 U.S. 287, 53 S.Ct. 637, 77 L.Ed. 1180. With admitted or proven substantial change in the cost of materials and labor, the original cost cannot be accepted as the exclusive measure but appropriate consideration must be given this factor of increased costs. State of Missouri ex rel. Southwestern Bell Telephone Co. v. Public Service Commission, supra [262 U.S. 276, 43 S.Ct. 544, 67 L.Ed. 981]; Los Angeles Gas & Electric Corp. v. Railroad Commission, supra. This is necessary for the reason that the company is entitled to a reasonable return upon the fair value of its properties at the time the rate is fixed. State of Missouri ex rel. Southwestern Bell Telephone v. Public Service Commission, supra; Willcox v. Consolidated Gas Co., 1909, 212 U.S. 19, 29 S.Ct. 192, 53 L.Ed. 382." 294 P. 2d at 383.

The record before us clearly indicates that the Commission adopted, in toto, the "modified" fair value of Citizens' properties as determined by John Luthin, the witness for the City. The acceptance of evidence presented by one person over

that presented by another is not necessarily decisive because the weight given any of the evidence is within the Commission's discretion, so long as that discretion is not abused. Arizona Corp. Comm. v. Arizona Water Co., 85 Ariz. 198, 335 P.2d 412 (1959). It is, however, also well established "that a reasonable judgment concerning *all* relevant factors is required in determining the fair value of the properties at the time of inquiry." 335 P.2d at 414.

The Commission's determination is based solely on Luthin's testimony and if this testimony was "substantial", then the trial court was in error and the Commission was acting within its proper discretion in adopting that testimony. If, however, Luthin's testimony is filled with speculation and uncertainty and if he used a method of evaluating Citizens' properties which did not reflect their fair value, then the trial court was correct in disregarding Luthin's testimony and finding the rate base, as calculated by the Commission, was not reasonably supported by the evidence. See Simms, supra.

The term "substantial evidence" has numerous definitions. The Arizona Supreme Court in Dodd v. Boies, 88 Ariz. 401, 357 P.2d 144, 146 (1960), stated:

"It is well established 'purely speculative inferences or conclusions do not constitute substantial evidence', * * * and 'an inference cannot * * * stand in the face * * * of another inference equally reasonable' * * *".

In International Ry. Co. v. Boland (1939) 169 Misc. 926, 8 N.Y.S.2d 643, 646, the Court defined substantial evidence as follows:

"* * * Substantial evidence must mean evidence of substance which establishes facts and from which reasonable inferences may be drawn. It does not connote suspicion, imaginative suggestions, surmises or conjectures. Reasonable inferences are no fine-spun arguments but are inferences based upon a reason or that a reasonable man would accept."

After carefully reviewing the record in the instant litigation, it is our opinion that the evidence offered by Luthin was not substantial and that he failed to consider all the relevant factors as required by law. His testimony was full of speculative theories and his conclusions were based on surmise and conjecture.

■ As previously stated, the determination made by Luthin and adopted by the Commission had to reflect a consideration of all relevant factors. If the Commission "refuses to consider all the relevant factors, the fair value of the properties cannot have been determined under our Constitution." 85 Ariz. at 202, 335 P.2d at 414. Mere speculation and arbitrary conclusions are not substantial evidence and cannot be determinative.

■ Luthin did not develop a fair value rate base; he developed a "modified" fair value rate base. We are unable to find authority for his concept. In determining the "modified fair value" of Citizens' properties devoted to public service, Luthin increased by $600,000 the amount reflected on Citizens' books as advances for construction. These advances are normally deducted from the fair value in determining a rate base. To support the $600,000 increase, Luthin concluded that Citizens' systems must include property not used and useful. Yet, on cross-examination, he is at a loss to support his theory.

"Q. Can you tell me in any specific instance in this company's plant where there is any facility which is not used or useful within a reasonable period of time in the future?

"A. The only facilities that I can speak about are those facilities that are above the ground, so I wouldn't be able to say whether mains are in areas where there is no service at all. * * *

"Q. I am talking about what you went out and saw, Mr. Luthin. Did you see any plant that was not either used or useful within a reasonable period of time in this area?

"A. No, I did not."

A reading of the testimony clearly indicates that Luthin was concerned with advances for construction that Citizens could have obtained and the minimum investment they could have made. What could have happened is mere speculation.

In addition to the speculative nature of Luthin's conclusions, there is a strong indication that at least part of his determination is based on a prudent investment theory. He testified:

"Well, I would not say that it [a company installation] wasn't required. I am saying that the company was *not justified in spending* $390,000 of its own money to make this installation." (emphasis ours)

■ This consideration is contrary to the law in Arizona. The propriety of Citizens' investments is not controlling in a rate case. In Arizona Water Co., supra, the Court stated:

"* * * The amount of capital invested is immaterial. Under the law of fair value, a utility is not entitled to a fair return on its investment; it is entitled to a fair return on the fair value of its properties devoted to the public use, no more and no less. It has been stated that under this test it makes no difference whether the utility 'bought it, received it as a gift, or won it in a lottery. * * *'" 335 P.2d at 415.

In our opinion, the trial court was correct in determining that proof offered by Luthin and adopted by the Commission did not satisfy the Arizona constitutional requirements of finding a fair value rate base.

Having decided that the Commission's determination of the fair value rate base was arbitrary and unsupported by the evidence, we need not concern ourselves with the propriety of the 5.2% rate of return. A rate of return can be calculated only after a fair value rate base has been determined. It follows therefrom that the Commission on remand will have to calculate a new rate of return based upon a new fair value rate base.

The collateral issues raised by the appellants are not dispositive of this appeal and do not require our determination. The judgment of the trial court is hereby affirmed and the cause is remanded to the Commission for the determination of the fair value of Citizens' properties, a fair rate of return to be allowed thereon and the affixing of just and reasonable rates.

STEVENS, P. J., and DONOFRIO, J., concur.