IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SIERRA CLUB – GRAND CANYON CHAPTER,
*Plaintiff/Appellee,*

*v.*

ARIZONA CORPORATION COMMISSION,
*Defendant/Appellant.*

No. 1 CA-CV 14-0003
FILED 7-23-2015

Appeal from the Superior Court in Maricopa County
No.  LC2012-000470-001
The Honorable Crane McClennen, Judge

**REVERSED**

COUNSEL

Arizona Center for Law in the Public Interest, Phoenix
By Timothy M. Hogan, Joy Herr-Cardillo
*Counsel for Plaintiff/Appellee*

Arizona Corporation Commission, Legal Division, Phoenix
By Wesley C. Van Cleve, Charles H. Hains, Janet F. Wagner
*Counsel for Defendant/Appellant*

Curtis Goodwin Sullivan Udall & Schwab, PLC, Phoenix
By William P. Sullivan, Trish Stuhan
*Counsel for Amicus Curiae Reclamation Power Group, LLC*

## OPINION

Judge Patricia A. Orozco delivered the opinion of the Court, in which Presiding Judge Samuel A. Thumma and Judge Michael J. Brown joined.

**O R O Z C O**, Judge:

¶1        This appeal concerns the development of a proposed "waste-to-energy" (WTE) facility, which would generate electricity by burning landfill waste, and the classification of electrical power that would be produced by the proposed facility.  The Arizona Constitution grants the Arizona Corporation Commission (the Commission) broad power to "prescribe just and reasonable" classifications and rates for services rendered by public service corporations.  Ariz. Const. art. 15, § 3.  We review the scope of that authority and the deference due a Commission decision, later vacated by the superior court, granting approval for the proposed WTE facility.  For the reasons that follow, we reverse the superior court's decision and reinstate the Commission's decision to the extent it grants an application by Mohave Electric Cooperative, Inc. (Mohave) for a waiver to the Renewable Energy Standard and Tariff (REST) rules.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Arizona public utility corporations providing electricity are subject to the REST rules promulgated in Arizona Administrative Code (A.A.C.) sections R14-2-1801, *et seq.*   These rules require affected corporations "to satisfy an Annual Renewable Energy Requirement by obtaining Renewable Energy Credits [(Credits)] from Eligible Renewable Energy Resources."  A.A.C. R-14-2-1804.A.  A Credit is obtained for each kilowatt-hour "derived from an Eligible Renewable Energy Resource."  A.A.C. R14-2-1803.A.   Although specific Eligible Renewable Energy Resources are listed in the rules, the Commission "may adopt pilot programs in which additional technologies are established as Eligible Renewable Energy Resources."  A.A.C. R14-2-1802.D.   The Commission also "may waive compliance with any provision of [the REST rules] for good cause."  A.A.C. R14-2-1816.A.

¶3        Mohave filed an application asking the Commission to either (1) recognize a proposed WTE facility as a "pilot program," or (2) waive the REST rules for the proposed facility "to the limited extent necessary to

recognize energy produced [by the] facility as an 'Eligible Renewable Energy Resource.'" Mohave's application stated that Reclamation Power Group, LLC (RPG), which intended to develop, own, and operate the proposed WTE facility in Maricopa County, could not provide "economically viable" power unless the Commission classified the municipal solid waste that would be used as fuel by the facility as a Credit-eligible "Renewable Energy Resource." Appellee, Sierra Club – Grand Canyon Chapter (Sierra Club) successfully intervened to oppose Mohave's application.

¶4 The Commission's Utilities Division (Staff) produced a report on Mohave's application and drafted a recommended decision. The report stated that Mohave had provided Staff with a "breakdown, by category" of a waste sample from a landfill that Mohave claimed was representative of the waste composition the WTE facility would burn as fuel if the facility became operational. The report discussed how the Mohave "breakdown" showed ninety-five percent of the waste consisted of "biogenic material."[1] The Staff report concluded that burning waste of this composition would mean "the biogenic material contributes about [ninety-one] percent of the energy to the process while non-biogenic materials contribute about [nine] percent[.]" The report suggested that the ninety-one percent figure was high in relation to the results of other studies. As a result, Staff recommended that the Commission not grant "pilot program" status and instead grant a good-cause waiver of the REST rules to allow seventy-five percent of the kilowatts produced by the facility to be Credit-eligible "as being produced by an Eligible Renewable Energy Resource."

¶5 Both Mohave and Sierra Club filed exceptions to the Staff recommendation. Following an open meeting, the Commission held a three-day evidentiary hearing before an administrative law judge (ALJ). Seven witnesses testified, including representatives from Staff and acting President of RPG Ronald Blendu. Following the evidentiary hearing, the Commission adopted most of the Staff findings and recommended decision, with two important changes: the Commission (1) granted the WTE facility "pilot program" status under the REST rules, noting that "[a]lthough we disagree with Staff that a waiver of the REST Rules is

---

[1] The REST rules do not define "biogenic," but they define somewhat related words such as "biomass," which is "any raw or processed plant-derived organic matter available on a renewable basis[.]" A.A.C. R14-2-1802.A.2.; *cf.* The American Heritage Dictionary of the English Language 183 (5th ed. 2011) (defining "biogenic" as "[p]roduced by living organisms or biological processes.").

necessary to approve [Mohave's] application . . . we recognize and acknowledge that Staff's analysis . . . provides an independent and alternative basis upon which to approve this application[,]"and (2) granted Credits for ninety percent of the kilowatt hours that would be produced by the facility.

¶6        Sierra Club petitioned for a rehearing, which the Commission granted.  Another evidentiary hearing was held, with extensive testimony from several witness, once again including representatives from Staff and Ronald Blendu.  Following the rehearing, the Commission affirmed its initial decision "in its entirety."  The Commission denied Sierra Club's petition for rehearing on that decision.

¶7        Sierra Club then sought review of the Commission's decision in superior court pursuant to Arizona Revised Statutes (A.R.S.) section 40-254 (West 2015).[2]  Sierra Club and the Commission requested judgment on the record created before the Commission.  Following briefing and oral argument, the superior court vacated the Commission's decision, stating that "the authorities and arguments provided by [Sierra Club] are well-taken, and this Court adopts those authorities and arguments in support of its decision."  The superior court further awarded Sierra Club its attorney fees and costs.  After entry of judgment by the superior court, this timely appeal followed. We have jurisdiction pursuant to A.R.S. § 12-2101.B. (West 2015).

## DISCUSSION

I.    Appropriate Standards of Proof and Review

¶8        The Commission first contends that its constitutional ratemaking authority entitled its decision to a more deferential standard of review than it received from the superior court.   Additionally, the Commission argues that the superior court erred by applying ambiguous standards of proof and review.  The proper standards of proof and review for challenges to Commission decisions are legal questions we review de novo. *See Tucson Elec. Power Co. v. Ariz. Corp. Comm'n.*, 132 Ariz. 240, 242-44 (1982).

¶9        The Commission occupies a unique place in Arizona's government, with our state constitution expressly stating the Commission's purpose and powers.  *See generally* Ariz. Const. art. 15.  Our supreme court

---

[2]        We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

has described the Commission as "another department of government, with powers and duties as well defined as any branch[.]" *State v. Tucson Gas, Elec. Light & Power Co.*, 15 Ariz. 294, 306 (1914); *see also Ariz. Corp. Comm'n v. State ex rel. Woods*, 171 Ariz. 286, 290 (1992) (recognizing that "[t]he [Arizona Constitution's] framers established the Commission as a separate, popularly-elected branch of state government"). This special status makes the judicial review process for the Commission's decisions distinct from the process for reviewing other administrative decisions, although they share many similarities. *See Tucson Elec. Power Co.*, 132 Ariz. at 243; *compare* A.R.S. § 12-905.A. (West 2015) *with* A.R.S. § 40-254.A (West 2015).

**¶10**          A further distinction exists concerning the scope of judicial review for Commission decisions. As set forth in *Tucson Electric Power Company*, a court's de novo review is "limited" when the reviewing court is examining a ratemaking decision. 132 Ariz. at 243-44. Here, Sierra Club asserts that the Commission's ratemaking authority is limited to particular elements, none of which apply to decisions about "pilot programs" or waivers under the REST rules. But Arizona case law has not restricted "ratemaking" as such. *See Woods*, 171 Ariz. at 294 (concluding that "even assuming we restrict the Commission's regulatory power to its ratemaking function, we must give deference to the Commission's determination of what regulation is reasonably necessary for effective ratemaking"). Indeed, this court recently concluded that the Commission promulgated the REST rules pursuant to its ratemaking power. *See Miller v. Ariz. Corp. Comm'n.*, 227 Ariz. 21, 29, ¶ 33 (App. 2011). Sierra Club contends that the court's holdings in *Miller* are inapposite because that case concerned a collateral attack on the Commission's power to enact the regulations. It follows, however, that rules enacted under the Commission's ratemaking power are also reviewable under the standards for reviewing ratemaking decisions. As a result, we conclude the Commission decision here was made under the Commission's ratemaking power. We now turn to the appropriate standards of proof and review for ratemaking cases.[3]

---

[3]      We find unavailing Sierra Club's argument that it is "abundantly clear" that challenging a Commission ratemaking decision must be done as a direct appeal to the Court of Appeals pursuant to A.R.S. § 40-254.01. Although this court has interpreted A.R.S. § 40-254.01 as limiting direct appeals to this court to ratemaking decisions by the Commission, that opinion does not conclude that all challenges to Commission ratemaking decisions must be brought pursuant to § 40-254.01. *See Arizona-American Water Co. v. Ariz. Corp. Comm'n*, 209 Ariz. 189, 191, ¶ 10 (App. 2004).

¶11     The applicable standard in reviewing a Commission decision is found in A.R.S. § 40-254.E., which provides that "[i]n all trials, actions and proceedings the burden of proof shall be upon the party adverse to the [C]ommission or seeking to vacate or set aside any determination or order of the [C]ommission to show by clear and satisfactory evidence that it is unreasonable or unlawful."   The Arizona Supreme Court has provided guidance on how the superior court should review a ratemaking decision under § 40-254.  First, the superior court must conduct a "limited" de novo review via a new trial to give the parties an opportunity to present new evidence.  *See Tucson Elec. Power Co.*, 132 Ariz. at 243.  In considering the evidence presented to the Commission, however, "[t]he [s]uperior [c]ourt *may not* reweigh the evidence and substitute its judgment for that of the Commission, but *may* disturb the Commission's rate decision *only if* it is not reasonably supported by the evidence, is arbitrary, or is otherwise unlawful."   *Id.* (emphasis added; internal citation omitted).  After the superior court reviews a Commission decision, "an appellate court reviews the [s]uperior [c]ourt's decision and not the Commission's[.]" *Id.* at 244.  If the superior court's decision "disturbed" the Commission's, the appellate court examines the superior court's "contrary conclusions to see if they are supported by clear and satisfactory evidence." *Id.*  "Clear and satisfactory evidence" is the same as "clear and convincing evidence" and is a higher burden than preponderance of evidence. *Id.* at 243.

¶12     Even under a "limited" de novo review, the court is not bound by the Commission's legal conclusions, and a reviewing court must "determine independently whether the Commission erred in its interpretation of the law." *Babe Invs. v. Ariz. Corp. Comm'n*, 189 Ariz. 147, 150 (App. 1997).  The Commission's factual determinations, however, are entitled to deference and the superior court "is not free to overturn [them] unless the plaintiff demonstrates by 'clear and convincing evidence' that the Commission's determination is unreasonable." *Grand Canyon Trust v. Ariz. Corp. Comm'n*, 210 Ariz. 30, 34, ¶ 11 (App. 2005) (citing *Tucson Elec. Power Co.*, 132 Ariz. at 243-44).

II.     The Superior Court's Judgment

¶13     In entering judgment in favor of Sierra Club, the superior court made the following determinations:

> 1. The Corporation Commission's [REST] rules do not allow [m]unicipal [s]olid [w]aste . . . as an eligible renewable energy resource and, therefore, waste-to-energy facilities using

[municipal solid waste] are not eligible as a pilot program under the rules;

2. The proposed [WTE] facility does not qualify for a waiver from the requirements of the REST rules because good cause was not established for a waiver and a waiver would be inconsistent with the exclusion of [municipal solid waste] as an eligible renewable resource under the rules; and

3. There was no credible evidence to support the Commission's determination that 90% of the electricity from the proposed [WTE] facility would come from biogenic sources.

We analyze these conclusions in turn.

A.      The Superior Court's Interpretation of the REST Rules

¶14      The superior court's first two conclusions construe and interpret the REST rules. We therefore review them de novo to the extent necessary to resolve this appeal. See *BNSF Ry. Co. v. Ariz. Corp. Comm'n*, 228 Ariz. 481, 485, ¶ 12 (App. 2012) (observing Court of Appeals "can draw our own legal conclusions" in reviewing the superior court's review of a Commission decision); *Libra Grp., Inc. v. State*, 167 Ariz. 176, 179 (App. 1991) (noting "applicable statutes and regulations" are reviewed de novo). However, because we conclude good cause was established for a waiver of the REST rules, we need not determine as a matter of law whether the REST rules preclude pilot program status for WTE facilities that use municipal solid waste. *See KZPZ Broad., Inc. v. Black Canyon City Concerned Citizens*, 199 Ariz. 30, 38, ¶¶ 28-29 (App. 2000) (noting that a dispositive holding on one issue may preclude appellate review of other presented issues).

¶15      As previously noted, the REST rules require affected utility corporations "to satisfy an Annual Renewable Energy Requirement by obtaining [Credits] from Eligible Renewable Energy Resources." A.A.C. R14-2-1804.A. The rules generally define "Eligible Renewable Energy Resources" as "applications of . . . technologies that displace Conventional Energy Resources that would otherwise be used to provide electricity to an Affected Utility's Arizona customers[.]" A.A.C. R14-2-1802.A. A "Conventional Energy Resource" is defined as "an energy resource that is non-renewable in nature, such as natural gas, coal, oil, and uranium, or electricity that is produced with energy resources that are not Renewable Energy Resources." A.A.C. R14-2-1801.C. By express provision in the REST

rules, "[t]he Commission may waive compliance with any provision of [the REST rules] for good cause." A.A.C. R14-2-1816.A.

**¶16** Sierra Club asserts the superior court correctly found that good cause for a waiver was not established. More specifically, Sierra Club argues that Mohave never claimed it needed a waiver because it cannot comply with the REST rules and the good cause exception should be construed narrowly to prevent the exception from "swallow[ing] the rule."

**¶17** Whether good cause exists for a waiver is a case-by-case determination that "depends on the particular circumstances . . . and considerations of practical convenience." *See City of Phoenix v. Peterson*, 11 Ariz. App. 136, 141 (App. 1969). Generally, a finding of good cause, or lack thereof, is reviewed for an abuse of discretion. *See Bd. of Educ. of Tempe Union High Sch. Dist. of Maricopa Cnty. v. Lammle*, 122 Ariz. 522, 527 (App. 1979) (determining whether a trial court's review of a school board's dismissal of an employee "for good cause" was "arbitrary, capricious or an abuse of discretion"); *Maher v. Urman*, 211 Ariz. 543, 548-49, ¶ 15 (App. 2005). When, as here, the superior court has "disturbed" the Commission's finding, we must determine whether the "contrary conclusions . . . are supported by clear and satisfactory evidence." *Tucson Elec. Power Co.*, 132 Ariz. at 243. Thus, in this case, we must determine if "clear and satisfactory evidence" supports the superior court's conclusion that the Commission abused its discretion in finding good cause existed to waive the REST rules. *See id.* at 244.

**¶18** Although the Commission granted Mohave's application for pilot program status, the Commission also acknowledged that an "independent and alternative basis" existed to grant Mohave a waiver of the REST rules. This conclusion was consistent with the Staff recommendation that the Commission grant Mohave a waiver. In its recommendation, Staff emphasized the experimental nature of WTE facilities and concluded that "the potential benefits [of a WTE facility] outweigh the potential consequences, especially when compared to the alternative of landfilling [municipal solid waste]." Staff maintained this position throughout the Commission's proceedings.

**¶19** On this record, we cannot conclude that Sierra Club showed by clear and satisfactory evidence that good cause for a waiver was not established. Much of the evidence presented to the Commission may be characterized as a debate over the degree to which municipal solid waste used as fuel for WTE facilities may be considered "renewable." Given the Commission's constitutional authority over these matters, the Commission

is ultimately charged with evaluating such issues and, as such, is the best-equipped branch of government to do so. Although meaningful judicial review requires that courts make their own legal determinations, courts properly must exercise a more deferential review towards discretionary matters "constitutionally entrusted to the Commission." *See US W. Commc'n, Inc. v. Ariz. Corp. Comm'n*, 185 Ariz. 277, 280 (App. 1996).

**¶20** Irrespective of whether the use of municipal solid waste as fuel makes a WTE facility eligible for pilot program status, the REST rules do not explicitly exclude energy produced from municipal solid waste, or at least those portions that may be considered "renewable," from being considered Credit-eligible if the Commission waives the REST rules for good cause. To the extent this involves construing the REST rules, we conclude only that the Commission retained the discretion to issue a good cause waiver of the rules. The Staff report and testimony stating that a WTE facility could provide substantial benefit to Arizona's utility infrastructure provided sufficient good cause to issue such a waiver. The superior court's conclusion that the Commission could not waive the REST rules because it "would be inconsistent with the exclusion of [municipal solid waste] as an eligible renewable resource under the rules" is neither supported by the plain language of the REST rules nor by clear and satisfactory evidence in this record.

### B. The Superior Court's "No Credible Evidence" Conclusion

**¶21** We next turn to the superior court's conclusion that no credible evidence supported the Commission's determination allowing ninety percent of the municipal solid waste that will be used as fuel by the WTE facility to be considered a "renewable energy source." Because this conclusion "disturbed" the Commission's decision, we must determine whether the superior court's conclusion is supported by "clear and satisfactory evidence." *See Tucson Elec. Power Co.*, 132 Ariz. at 243.

**¶22** Similar to an appellate court's general deference to trial courts on credibility determinations and the weighing of evidence, the Commission is also entitled to deference when "the [C]ommission's ultimate conclusion or findings of facts [are] supported by substantial evidence, is not arbitrary or is not otherwise unlawful." *Simms v. Round Valley Light & Power Co.*, 80 Ariz. 145, 154 (1956). Put differently, the superior court "is not free to overturn" the Commission's factual determinations unless the party challenging those findings "demonstrates by 'clear and convincing evidence' that the Commission's determination is unreasonable." *Grand Canyon Trust*, 210 Ariz. at 34, ¶ 11 (citing *Tucson Elec.*

*Power Co.*, 132 Ariz. at 243-44). Substantial evidence is evidence which would permit a reasonable person to reach the Commission's result. *See In re Estate of Pouser*, 193 Ariz. 574, 579, ¶ 13 (1999).

**¶23** The two evidentiary hearings before the Commission involved significant amounts of live testimony as well as written exhibits. Seven witnesses testified at the first hearing and nine at the second. In its initial recommendation, Staff stated that data received from Mohave, which was considered in formulating the Staff recommendation, showed the municipal solid waste that would be used by the proposed WTE facility would be composed of an estimated ninety-five percent biogenic (renewable) material. Staff deduced that burning municipal solid waste of such composition would mean ninety-one percent of the energy produced by the facility would be produced by renewable sources. However, Staff also noted that the ninety-five percent figure submitted by Mohave was high in relation to data about waste composition collected from other WTE facilities throughout the United States. Staff thus recommended seventy-five percent of any energy produced by the WTE facility be deemed Credit-eligible.

**¶24** After Mohave filed exceptions to the Staff recommendation, one Commissioner proposed an amendment that generated the ninety percent figure, with an additional provision that could reduce the percentage based on what Staff might discover from Mohave's mandatory semi-annual reports. At the first evidentiary hearing, a Staff representative testified that Staff had recommended the seventy-five percent figure because "we feel, since [the WTE facility] is an experiment or pilot . . . you might want to choose the more conservative estimate of the [seventy-five] percent. But that's, obviously . . . a call for the Commission." At the second evidentiary hearing, a different Staff representative testified that the ninety percent figure was "within the range . . . calculated based on the samples provided by Mohave" and that "it would be a reasonable starting figure," as would Staff's recommendation of seventy-five percent.

**¶25** At the second evidentiary hearing, Ronald Blendu testified about the data Mohave submitted to Staff. Blendu stated that the data was generated from 15,300 pounds of trash collected from a municipal area in western Maricopa County. The trash was sorted "into various categories" to give RPG an idea of "what the fuel supply would [be to] go into the [WTE facility]." Blendu testified in detail about the process used to determine the recycling rates, which would presumably indicate RPG's ability to remove non-renewable material out of the waste before it is consumed in the facility.

**¶26** Given this evidence in the Commission record, the superior court improperly reweighed the evidence in concluding no credible evidence existed to support the ninety percent figure adopted by the Commission. *See Tucson Elec. Power Co.*, 132 Ariz. at 243. Sierra Club contends that the Commission's decision was based on speculative evidence that "defied credibility." But in doing so, Sierra Club merely claims the data produced by Mohave and relied upon by Staff is an apparent outlier among similar data collections around the United States. Although Sierra Club asserts that this other data required the Commission to discard Mohave's data, it is the Commission's constitutional responsibility, when engaged in its ratemaking power, to view conflicting evidence and make determinations accordingly.

**¶27** The nature of Mohave's data was not lost on the Commission. By establishing procedures to report on the actual composition of municipal solid waste used as fuel once the WTE facility became operational, the Commission implicitly acknowledged that future Credit eligibility may require adjustment depending on the data collected. Because the facility is not operational, no data on its fuel consumption currently exists, and the Commission was faced with deciding Mohave's application using projections and historical data from other facilities across the country. As a result, Mohave's data, the testimony of Blendu, the Staff recommendation, and other testimony and evidence amounted to substantial evidence supporting the Commission's decision. The superior court's conclusion that "no credible evidence" supported the Commission's decision was therefore not supported by clear and satisfactory evidence. *See Tucson Elec. Power Co.*, 132 Ariz. at 243. Thus, without new evidence showing Mohave was deceptive in producing its data or it was impossible, not just improbable, that the proposed WTE facility would produce ninety percent of its power from a renewable energy source, the superior court was bound by the Commission's factual findings.

## CONCLUSION

¶28     We conclude the Commission was acting within the REST rules' purview by granting a waiver to Mohave for the WTE facility. We also conclude substantial evidence supported the Commission's determination that ninety percent of energy produced by the WTE facility would be eligible for Credits, contingent upon the reporting requirements and adjustments required by the Commission's decision. Accordingly, we reverse the judgment of the superior court and reinstate the Commission's decision as necessary to be consistent with this decision. Because we reverse the superior court's judgment, we set aside the award of attorney fees to Sierra Club.



Ruth A. Willingham · Clerk of the Court
FILED: ama