NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

PETER T. ELSE, *Plaintiff/Appellant,*

*v.*

ARIZONA CORPORATION COMMISSION, *Defendant/Appellee,*

---

SUNZIA TRANSMISSION LLC, *Intervenor/Appellee.*

No. 1 CA-CV 17-0208
FILED 1-25-2018

---

Appeal from the Superior Court in Maricopa County
No. CV2016-092030
The Honorable Lori H. Bustamante, Judge

**AFFIRMED**

---

COUNSEL

Peter T. Else, Mammoth
*Plaintiff/Appellant*

Arizona Corporation Commission, Phoenix
By Charles H. Hains, Wesley C. Van Cleve,
Andrew M. Kvesic, Maureen A. Scott
*Counsel for Defendant/Appellee*

Ryley Carlock & Applewhite PA, Phoenix
By Albert H. Acken, Samuel L. Lofland
*Co-Counsel for Intervenor/Appellee*

Munger Chadwick, Green Valley
By Lawrence V. Robertson, Jr.
*Co-Counsel for Intervenor/Appellee*

---

## MEMORANDUM DECISION

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

---

**W I N T H R O P**, Presiding Judge:

**¶1**        Peter T. Else ("Else") appeals the superior court's order affirming the Arizona Corporation Commission's (the "Commission") grant of a Certificate of Environmental Compatibility ("CEC") to SunZia Transmission LLC ("SunZia").  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        SunZia is an independent transmission project owned by Salt River Project, Tucson Electric Power Company, Tri-State Generation and Transmission Association, Shell Wind Energy, and Southwestern Power Group II, LLC.  In 2006, the Southwest Area Transmission Subregional Planning Group[1] proposed a new transmission line between New Mexico and southern Arizona to provide service for a growing demand for renewable energy (the "Project").  In 2008, SunZia, as a project owner, filed a right-of-way application with the Bureau of Land Management ("BLM").  Subsequently, the BLM, in connection with other federal and state agencies, began to prepare an Environmental Impact Statement.  After hearing public comment, the BLM issued its final Environmental Impact Statement

---

[1]        The Southwest Area Transmission Subregional Planning Group is a group of governmental entities; transmission regulators, users, owners, and operators; and environmental groups that promote regional planning of transmission lines in the Southwest.  *Regional Planning*, WESTCONNECT, http://regplanning.westconnect.com/swat.htm (last visited Jan. 18, 2018).

detailing the Project's proposed route through southern Arizona, and ultimately in 2015 approved SunZia's request for a right-of-way.

¶3        After the BLM's approval of its right-of-way, SunZia applied for a CEC with the Arizona Power Plant and Transmission Line Siting Committee (the "Committee").[2]   In support of its application SunZia submitted numerous documents detailing the proposed transmission route's geography, the flora and fauna in the area, and any negative impacts construction would have on the surrounding environment.  SunZia further promoted the Project as helping to generate and transport additional electricity, helping to relieve existing transmission congestion, and helping to provide additional energy delivery options to aid Arizona in meeting its renewable energy portfolio standards and federal mandates.  The Project was expected to begin development in 2018 and conclude construction of the first transmission facility by 2021.

¶4        The Committee held a multi-day hearing regarding SunZia's CEC application.  During the hearing, the Committee heard from the Project's proponents and opponents, went on site visits to view the proposed route, and reviewed environmental impact studies.  Numerous parties attended the hearing, including representatives for SunZia, the Commission, Pinal County, Natural Resources Conservation Districts, private residential communities, as well as Else[3] and other *propria persona* intervenors.

¶5        At the hearing, SunZia argued the Project would "create[] access to stranded renewable [energy] resources."   To support this proposition, SunZia presented maps of the Project's proposed route with estimates of the amount of energy that could be generated from available solar and wind resources in eastern Arizona and western New Mexico.  In opposition, Else, and other intervenors, argued there was no proven need for the proposed renewable energy and that it was unlikely the Project

---

[2]        The Arizona portion of the Project spans approximately 199 miles from Greenlee County to the existing Pinal Central Substation, and consists of two single-circuit 500-kilovolt transmission lines and associated facilities. The Project primarily crosses lands administered by the Arizona State Land Department and BLM, with only a small portion crossing private lands.

[3]        Else moved to intervene as a landowner in the San Pedro watershed and a conservation activist in the region, and the Committee granted his motion.

would come to fruition. At the conclusion of the hearing, the Committee discussed whether it could require that the Project comply with renewable energy conditions and proposed two requirements: (1) that the Project not begin construction more than 90 days before construction of the New Mexico wind project; and (2) that approval of the Project be conditioned on transmitting a certain percentage of renewable energy. Ultimately, after significant debate, both conditions were rejected.[4] The Committee, however, did adopt the condition that SunZia "will, in good faith, and consistent with the requirements of state and federal law, use its best efforts to secure transmission service contracts for renewable energy generation[,]" and approved the CEC.[5]

¶6 After the Committee approved the CEC, it sent the CEC to the Commission for independent review. The Commission then heard additional public comment and argument on the matter. Opponents of the Project reiterated their concern that the Project would not be constructed as proposed. They further accused SunZia of wanting an approved right-of-way without being obligated to deliver renewable energy to Arizona. To ensure against this, they requested the Commission specifically condition the CEC on SunZia transmitting renewable energy. The Commission, however, did not impose any additional conditions and approved the CEC by a 3-2 vote. In approving the CEC, the Commission incorporated the Committee's findings of fact and conclusions of law, and adopted the Committee's "good faith" and "best efforts" conditions.[6] Else moved for a rehearing, which the Commission denied, and then filed a timely appeal with the superior court.

---

[4] In rejecting the conditions, the Committee noted that the Commission was better qualified to determine the legality of imposing the proposed conditions on the CEC.

[5] The Committee additionally found that "[t]he Project may assist the state in meeting the goal of increasing the use of renewable energy in the state."

[6] In the dissent, Chairman Little argued that SunZia presented "either no evidence or questionable evidence" that any of the Project's purported benefits would materialize. Chairman Little further argued that SunZia provided no "real assurance that the proposed line will actually lead to the development of additional renewable energy resources."

¶7        In the superior court, Else moved and SunZia and the Commission cross-moved for judgment on the administrative record. The court then held oral argument regarding the motions at which Else argued the Project's actual purpose was different from its purported purpose.[7] In response, the Commission and SunZia argued there was substantial evidence from which the Commission could render its decision, and that the Commission properly balanced the competing factors in determining whether to grant the CEC. They further argued that the CEC's conditions were sufficient to address the unique nature and location of the Project.

¶8        The superior court affirmed the Commission's grant of the CEC, finding the Commission's decision was supported by substantial evidence. Else timely appealed.

¶9        We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and the Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2016), 12-2101(A)(1) (2016), and 40-254 (2011).[8]

**ANALYSIS**

¶10       On appeal Else argues the superior court erred in affirming the Commission's grant of the CEC to SunZia because there was insufficient evidence to grant the CEC and because the actual project will constitute a substantial change from the proposed project.

    I.    *Standard of Review*

¶11       This court must determine whether the Commission's decision, and the superior court's subsequent ruling on the Commission's decision, was supported by substantial evidence. *City of Tucson v. Citizens Utils. Water Co.*, 17 Ariz. App. 477, 481 (1972). Substantial evidence is evidence from which a person may draw a reasonable inference. *Id. See also Sierra Club v. Ariz. Corp. Comm'n*, 237 Ariz. 568, 575, ¶ 22 (App. 2015) (finding evidence is substantial if it permits "a reasonable person to reach

---

7        In further support, Else relied on SunZia's opposition to setting conditions on the Project which would tie it to renewable energy to argue that it was unlikely the Project would transmit renewable energy.

8        Statutes which refer to a party's right to appeal a decision to the "supreme court" enacted before the establishment of this court are construed as giving parties the right to appeal to the court of appeals. *See Pioneer Tr. Co. of Ariz. v. Pima Cty.*, 168 Ariz. 61, 64 n.1 (1991).

the Commission's result" (citing *In re Estate of Pouser*, 193 Ariz. 574, 579, ¶ 13 (1999))). Thus, we will defer to the Commission's factual findings if supported by substantial evidence, but, we will review *de novo* the Commission's legal conclusions and statutory interpretations. *Grand Canyon Tr. v. Ariz. Corp. Comm'n*, 210 Ariz. 30, 34, ¶ 13 (App. 2005). *See also Sierra Club*, 237 Ariz. at 575, ¶ 22 (finding this court will defer to the Commission's factual conclusions if supported by substantial evidence, unless such conclusions are arbitrary or unlawful (quotation omitted)). It is for the Commission, not this court, to weigh the evidence presented. *City of Tucson*, 17 Ariz. App. at 480-81.

**¶12**　　　　A party challenging the Commission's decision must show by clear and satisfactory evidence that the Commission's decision was unreasonable or unlawful. *See* A.R.S. § 40-254(E). "Clear and satisfactory" evidence requires the same level of proof as "clear and convincing" evidence. *See Tucson Elec. Power Co. v. Ariz. Corp. Comm'n*, 132 Ariz. 240, 243 (1982).

　　　　*II.　　Substantial Evidence*

**¶13**　　　　On appeal, Else argues the superior court abused its discretion in affirming the Commission's decision because it relied solely on SunZia's stated intentions and speculations about the Project instead of credible evidence.[9] While we agree with Else that mere speculation does not constitute "substantial evidence," we disagree that the superior court based its decision on purely speculative evidence in this case. Further, as the challenger to the Commission's decision, Else bore the burden of proof to show by clear and satisfactory evidence that the Commission's decision was unreasonable or unlawful. *See* A.R.S. § 40-254(E). Else has not met his burden of proof.

**¶14**　　　　The Committee has broad discretion to approve and impose reasonable conditions on the CEC.[10] The Commission, however, need not

---

[9]　　　　Else argues it is likely that only a portion of the Project will come to fruition, and because of this, the actual project constitutes a substantial change. As explained further below, this argument is not properly brought before us at this time.

[10]　　　　The Committee "may impose reasonable conditions on the issuance of a certificate of environmental compatibility" after considering the existing plans for development of the proposed site; the flora and fauna in

adhere to the Committee's recommendation, and may independently approve or deny the CEC.[11]  As previously mentioned, this court defers to the Commission's factual findings.  *See Sierra Club*, 237 Ariz. at 573, ¶ 12. Further, we will not interfere with the Commission's decision to accept "evidence presented by one person over that presented by another[,]" unless the Commission has abused its discretion.  *City of Tucson*, 17 Ariz. App. at 480-81.

**¶15**		In *City of Tucson*, this court found the Commission did not rely on substantial evidence when calculating the water rate because it relied on statements from an individual who had not considered all the relevant factors to determine the fair value of the rate.  *Id.* at 481.  In arriving at this decision, the court found that substantial evidence is evidence that "establishes facts and from which reasonable inferences may be drawn[,]" but not evidence which is "purely speculative."  *Id.* (quotation omitted).  In so ruling, the *City of Tucson* court did not completely reject the proposition that individual statements may provide "substantial evidence" for the Commission's decision.  *Id.*  Instead, the court concluded that an individual statement is insufficient if the individual fails to consider all relevant factors and law when making his statement.  *Id.*

**¶16**		Else contends SunZia presented entirely speculative evidence which is insufficient to support the Commission's grant of the CEC.  We disagree.  Unlike the record in *City of Tucson*, the record here indicates that the Commission considered and debated all relevant factors before

---

the area; the noise level; the availability of the proposed site for recreational purposes; the existing scenic area and historical sites in the proposed area; the total environmental impact; the practicability of achieving the proposed objective; the estimated cost; and any additional factors.  A.R.S. § 40-360.06(A)(1)-(9) (Supp. 2016).  Additionally, the Committee "shall give special consideration to the protection of areas unique because of biological wealth or because they are habitats for rare and endangered species." A.R.S. § 40-360.06(B).

[11]		*See* Albert H. Acken & Matthew G. Bingham, *Sustainable Energy in Arizona*, 43 Ariz. St. L.J. 669, 687 (2011) (finding the Committee has "a great deal of discretion when determining whether to issue a CEC, and . . . what conditions to impose on the project").  *See also* Ariz. Corp. Comm'n, http://www.azcc.gov/divisions/utilities/electric/linesiting-faqs.asp#m. (last visited Jan. 18, 2018) (noting the Committee has the discretion and authority to grant a CEC without conditions).

granting the CEC. The Committee conducted a multi-day hearing in which it heard from proponents and opponents of the Project. That hearing generated multiple exhibits totaling over 3,000 pages, and a transcript of over 2,500 pages. At the close of the hearing, the Committee discussed the costs and benefits of explicitly conditioning its grant of the CEC on SunZia's compliance with renewable energy benchmarks, but ultimately decided not to impose any such conditions. Following the Committee's hearing, the Commission independently reviewed the entire record and considered additional briefing and arguments regarding the Project. Throughout this entire process, both proponents and opponents of the Project have had multiple and adequate opportunities to present evidence of and to argue their conflicting views. On this record, we cannot say that the superior court's decision to affirm the CEC was an abuse of discretion.

**¶17** We recognize that certain evidence in this case may have been speculative to the extent it related to a transmission line project that has not yet been built; however, that does not mean all evidence in this case was speculative. SunZia presented numerous environmental studies and statements regarding the Project's anticipated energy sources and how the Project would impact the surrounding area. While there was no evidence presented that the New Mexico project had been built at the time of the CEC's grant, there was similarly no evidence to support Else's contention that the New Mexico project would never be built or that SunZia's transmission lines would be incapable of carrying renewable energy from other sources. Thus, there was, on this record, substantial evidence to support the grant of the CEC.

### III. Substantial Change[12]

**¶18** Else argues the superior court abused its discretion in affirming the Commission's grant of the CEC because the actual project that will ultimately be developed could be a substantial departure from SunZia's proposed renewable energy transmission line. In this regard, Else argues the superior court failed to consider the Project's purpose and scope,

---

[12] SunZia argues Else waived this argument by failing to raise it before appeal; we disagree. During the hearing in front of the Committee numerous parties, including Else, articulated their concern that the Project would never come to fruition or never be used to transmit renewable energy. This is sufficient to preserve the argument on appeal.

and the unique, irreparable harm that will occur if the grant of the CEC is affirmed.[13]

**¶19**      Else's argument is premature and not ripe for judicial review. *See Phelps Dodge Corp. v. Ariz. Elec. Power Coop., Inc.*, 207 Ariz. 95, 118, ¶ 94 (App. 2004) (finding courts may review formalized agency decisions that are brought by an individual who has been concretely affected by the decision). A court may not enter "a premature judgment or opinion on a situation that may never occur." *Town of Gilbert v. Maricopa Cty.*, 213 Ariz. 241, 244-45, ¶ 8 (App. 2006) (quoting *Winkle v. City of Tucson*, 190 Ariz. 413, 415 (1997)). We determine whether an issue is ripe for judicial review by evaluating "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Phelps Dodge Corp.*, 207 Ariz. at 118, ¶ 94 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).

**¶20**      Here, although Else argues the actual project will likely be substantially different from the proposed Project, he has provided no proof beyond his apprehension, which at this point is mere speculation. Else relies on the Commission's *Whispering Ranch* decision to support his argument that a substantial change has occurred. *Whispering Ranch*, Ariz. Corp. Comm'n Decision No. 58793 (1994).[14] Else's reliance on this decision, however, is misplaced. Unlike the situation in *Whispering Ranch*, SunZia had not as of the time of the issuance of the CEC begun construction on the Project. Thus, other than its stated plan, we do not know at this time whether and to what extent the Project will ultimately transmit renewable energy, and we cannot speculate as to whether a substantial change will occur.

---

[13]    Else's argument is largely based on his apprehension that the Arizona portion of the Project will be constructed before the New Mexico portion, thus, making it likely that SunZia will transmit only nonrenewable energy.

[14]    The Commission in *Whispering Ranch* addressed whether an applicant who had been granted a CEC to build a direct current transmission line could instead construct an alternating current line without the Commission's approval. *Id.* at 4. The Commission held that a change in the system by which power would be transmitted and distributed constituted a substantial change, thus, requiring the applicant to seek to amend its CEC with the Commission. *Id.* at 28.

**¶21**      The Committee and the Commission each discussed at length whether to impose more explicit conditions on the CEC, and ultimately chose not to.  While we understand the fear that many of the opponents of the Project have—that the Project will ultimately transmit most, if not all, of its energy generated by fossil fuels, as opposed to renewable energy sources—there is no evidence in the record that this has happened or likely will happen.  The CEC requires SunZia to "in good faith . . . use its best efforts to secure transmission service contracts for renewable energy generation."  If it becomes apparent that SunZia has made no such efforts, there may in the future be cause to bring an action for an alleged violation of the CEC to the Commission and/or the superior court.

## CONCLUSION

**¶22**      The superior court's order affirming the Commission's grant of the CEC is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA

10